HOLLIS & COMPANY *v.* McCARROLL, COMMISSIONER.

4-6017 140 S. W. 2d 420

Opinion delivered May 6, 1940.

*Buzbee, Harrison, Buzbee & Wright,* for appellant.

*Lester M. Ponder* and *Frank Pace, Jr.,* for appellee.

GRIFFIN SMITH, C. J. Questions for decision are: (1) Was the method by which the General Assembly of 1939 undertook to continue in force the Arkansas Retail Sales Tax Law violative of § 23, art. 5, of the constitution?[1] (2) Did appellant purchase the merchandise for sale at retail and become liable under § 9 of act 154 of 1937 through failure to collect the tax required to be paid by the consumer?

Appellant is an Arkansas corporation dealing in mill supplies, selling at wholesale and retail. When the commissioner of revenues presented a tax bill of $2,865.73 in addition to amounts declared and paid by appellant, injunctive relief was sought. This appeal is from the court's action in sustaining a demurrer to the complaint.

Plaintiff alleged that prior to notice of the contested assessment it had fully reported all taxes collected by it under mandates of the Sales Tax Act of 1937; that the claimed deficiency represents 2 per cent. of the price

[1] "No law shall be revived, amended or the provisions thereof extended or conferred by reference to its title only; but so much thereof as is revived, amended, extended or conferred shall be re-enacted and published at length."

of merchandise shipped in interstate commerce; that all sales involved were upon orders placed with it by the purchaser who specified what items were desired, and that in each instance the requirement was for merchandise not carried in stock, in consequence of which the order was directed to dealer or manufacturer in another state. The nonresident manufacturer or dealer charged appellant with the amount involved, and appellant, in turn, billed its customer within the state and collected therefor.

In urging that the general assembly's method of extending the sales tax was unconstitutional, appellant's position is this: Section 24 of act 154 of 1937 declared the state's right to collect the tax should expire July 1, 1939. Act 364 of 1939 is entitled "An Act to Repeal § 24 of Act 154 of the General Assembly of the State of Arkansas for 1937." Substance of act 364 is that "§ 24 of Act No. 154 of the Acts of the General Assembly of the State of Arkansas for 1937, approved February 26, 1937, be and the same is hereby repealed."

Nothing could be clearer than the intent of the general assembly to extend indefinitely the sales tax law as enacted in 1937. The means to that end constituted a short cut to the objective, but the constitution does not prohibit the repeal of a section of a statute. It does provide that no law shall be revived, amended, or the provisions thereof extended or conferred by reference to its title only, and directs that so much of the law as it is sought to revive, amend, extend, or confer shall be reenacted and published at length. Act 364 makes no reference to the title of act 154. When act 364 was approved March 16, 1939, act 154 was still in effect. Therefore, it was not "revived." Nothing was "conferred" by reference; nor was the 1937 enactment "extended" within the meaning of the constitution. The term "extended," as used in § 23 of art. 5 of the constitution has reference to an attempt by the law-making body (a) to add something to the text of a pre-existing law, or (b) to impose conditions upon another statute.

In *White* v. *Loughborough,* 125 Ark. 57, 188 S. W. 10, Chief Justice McCulloch, speaking for the court, said that the legislature might declare a right and refer to existing laws for the remedy without offending against § 23 of art. 5 of the constitution.[2]

In *Taylor* v. *J. A. Riggs Tractor Company*[2] the language used by Chief Justice Cockrill in *Scales* v. *State,* 47 Ark. 476, 1 S. W. 769, 58 Am. Rep. 768, is quoted in the sixth footnote at page 389. Other decisions are cited.[3] Constitutional provisions similar to ours are discussed in 59 C. J. The purpose intended to be served by such provisions is analyzed in 59 C. J., at page 616.[4]

When the section of act 154 limiting the life of the sales tax to July 1, 1939, was repealed, the general assembly was not acting without purpose. This is clearly indicated by the emergency clause, which says: "Said act now furnishes funds essential for education, relief, and general welfare of the people of the state of Arkansas, [and] it is imperative that said law remain in effect."

We hold that § 24 of act 154 was repealed, and that the remainder of the act was not impaired.

---

2 197 Ark. 383, 122 S. W. 2d 608.

3 See *White River Lumber Company* v. *Drainage District,* 141 Ark. 196, 216 S. W. 1043; *Gregory* v. *Cockrell,* 179 Ark. 719, 18 S. W. 2d 362, and cases there cited.

4 "As said in substance in many of the cases, the purpose [of the constitutional limitations] is that statutes shall carry on their face sufficient that, by an inspection, their import may be known. This purpose is everywhere admitted to be salutary. It was to prevent evils broadly referred to as 'blind legislation,' manifested in a number of ways. Amendments were made by merely striking out or inserting a phrase or word. Statutes repealed, and perhaps for that reason omitted from compilations, were revived by reference to title only. Existing laws or provisions of laws of the same or other jurisdictions were adopted by mere reference. All of these legislative practices frustrated the broad purpose of these constitutional limitations and constituted 'blind legislation.' In developing the remedy, restriction was first placed upon reviving or amending, or revising or amending by reference to the title only. This provision, as correctly construed by the courts, cured only some of the evils of 'blind legislation.' It did not touch 'reference statutes,' for such did not amend, revise or revive. The existing law was left to operate just as it did before. Its scope was merely enlarged in one way or another. It requires no argument to demonstrate that courts have no power to restrict legislative practice, even by consulting the mischief intended to be avoided, by declaring an act void when the language of the constitution does not make it so. To complete the remedy the restriction upon extensions was inserted. Here was language broad enough to effectuate the purpose, but so broad as to lead, if literally followed, to absurd results in hampering legislation. So construction was properly resorted to, not to defeat the true purpose of the provision, but to give it a reasonable and practical application. Thus arose the Arkansas rule of distinction, and possibly the Kentucky rule."—*State* v. *Armstrong,* 31 N. Mex. 220, 243 P. 333, 31 N. M. 220.

Nor (in view of decisions of the Supreme Court of the United States) do we think the sales made by appellant were transactions in interstate commerce. *McGoldrick, Comptroller of the City of New York* v. *Berwind-White Coal Mining Company*, 309 U. S. 33, 60 S. Ct. 388, 84 L. Ed.; *McGoldrich, etc.*, v. *A. H. DuGrenier, Inc.*, 309 U. S. 70, 60 S. Ct. 404, 84 L. Ed. (Although the writer of this opinion thinks the better view was expressed by Chief Justice Hughes in *McGoldrich* v. *Berwind-White Coal Mining Co.*, *supra*, concurred in by Mr. Justice McReynolds and Mr. Justice Roberts, the majority opinion written by Mr. Justice Stone is determinative of the law.)

That appellant in the case before us did not carry certain articles of merchandise or machinery, in stock and ordered from distributors or manufacturers in other states, with directions that shipments be made to its customers, does not relieve the transactions of their essential intrastate characteristics. The contracts of purchase were made in this state. In each case appellant's undertaking was to supply the merchandise and the customer's obligation was to pay appellant. The transaction was consummated in Arkansas. The point from which shipment was made was merely incidental, and of no concern to appellant's customer. The customer was not obligated to the nonresident shipper. Appellant profited to the extent of the difference between the price charged it and the price it in turn charged the customer.

Assuming there was no intent to defeat payment of the tax, and that only merchandise not carried in stock by appellant was ordered shipped direct to the customer-consumer, it is obvious that if responsibility for collecting sales tax may be evaded by ordering goods shipped directly to the customer from another state, hundreds of thousands of dollars in tax funds may be lost by the simple process of accepting orders and directing shipments from points without the state.

It is insisted that, if the act be held valid, and if the transactions are not classified as interstate and

therefore not taxable, § 13899 of Pope's Digest[5] precludes collection of the tax for prior years. That the sales tax is an excise was decided in *Wiseman* v. *Phillips*, 191 Ark. 63, 84 S. W. 2d 91. Appellant relies upon *State* v. *New York Life Insurance Company*, 198 Ark. 820, 131 S. W. 2d 639, to support the contention that former years are barred.

If the tax was collectible from appellant on the transactions involved (and we hold that it was), it was appellant's duty to report these sales to the commissioner of revenues. That settlements were made from month to month without mention of the items now in controversy is a reasonable inference to be drawn from the circumstances. If this is true, and there was no disclosure by appellant, the state is not estopped to collect on the undisclosed sales.

The complaint, however, alleges that from time to time audits of appellant's business were made by state agents. If in consequence of such audits appellant made an assessment of the items in question, but did not pay the tax because of the commissioner's ruling that it was not to be included in the declarations, then, under authority of the New York Life Insurance Company Case, *supra*, and *Superior Bath House Co.* v. *McCarroll, Commissioner*,[6] the tax for disclosed and reported periods would not be assessible.

Since the 1939 tax alone is involved in this appeal, and allegations of the complaint relating to prior transactions were not determinable in the claim appellant undertook to circumvent by injunction, the demurrer was properly sustained. If, however, the commissioner should seek to collect taxes alleged to be due on transactions consummated in former years, a question of fact might arise in respect of disclosures in the report or audit.

Affirmed.

[5] "After the assessment and full payment of any general property, privilege or excise tax, no proceedings shall hereafter be brought or maintained for the reassessment of the value on which such tax is based, except for fraud of the taxpayer, provided that failure to assess taxes as required by law shall be *prima facie* evidence of fraud."

[6] Ante, p. 233, 139 S. W. 2d 378.