## C. M. T. COMPANY, INC.
### vs.
## MAINE EMPLOYMENT SECURITY COMMISSION

Kennebec.   Opinion, June 27, 1960.

*Weeks, Hutchins & Frye,* for plaintiff.

*Milton L. Bradford,*
*Frank A. Farrington,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, SIDDALL, JJ.

WEBBER, J.   The appellant C. M. T. Company, Inc. is engaged in the business of producing "broiler" chickens from the egg to the processed bird ready for market.  The company leases a henhouse in which is produced about 10% of the eggs required in the company's operation.  The company has no interest in the other activities carried on at the farm where the leased henhouse is located.  The remaining egg

requirements, about 90% of total, are filled by purchase from independent producers. The eggs are incubated and hatched in a building devoted to that and to no other purpose and which is owned and operated by the company. This "hatchery" so-called is located on a six acre tract on which no ordinary farm operations are conducted. The company owns or controls several farms on which about 10% of the hatched chicks are raised to the size and weight necessary for "broilers." The remaining chicks, again about 90% of total, are raised on the farms of persons who contract with the company to undertake this service and who are ultimately paid a contract price based on the poundage of birds delivered to the company to be processed as "broilers." The company has no interest or concern in any of the other farm operations conducted by these independent contract growers. There are a number of employees of appellant who operate the company's "hatchery" and the issue here is whether or not their employment during part of 1958 and 1959 constituted "agricultural labor" exempt from the provisions of the Maine Employment Security Law.

Until an amendment was enacted in 1957, the term "agricultural labor" was defined by the applicable portions of R. S., 1954, Chap. 29, Sec. 3, Subsec. I as including "all services performed: A. On a farm, in the employ of any person, in connection with * * * the raising * * * of * * * poultry. * * * C. In connection with * * * the hatching of poultry * * * ." Obviously, "hatchery" employees were not engaged in taxable employment under the express terms of this definition of "agricultural labor" which was made exempt by other provisions of the law. The 1957 amendment, however, provided a new definition of "agricultural labor," the pertinent provisions of which were:

"'Agricultural labor' includes all services performed *on a farm in the employ of the operator of such farm,* in connection with * * * the raising

of * * * poultry * * * . * * * The term 'farm' shall include * * * poultry * * * farms * * * ." P. L., 1957, Ch. 381, Sec. 2.   (Emphasis ours.)

This definition remained in effect until in 1959 by further amendment the original definition was restored. We are here concerned only with the relatively short period during which the 1957 definition was in effect.  It is apparent that this definition was far more restrictive than that which obtained before and since and the "hatchery" employees were then engaged in taxable employment unless the "hatchery" constituted a "farm" within the meaning of the statute.

The appellant admits that the "hatchery" taken alone could not properly be considered a "farm" but urges that when viewed as an essential part of appellant's total enterprise, it is part of what should properly be considered as one great farming enterprise or "farm" within the meaning of the statute.

It would be difficult to define with precision what constitutes a "farm" in this day of mechanized agriculture. In the instant case, however, our task is made somewhat easier by the fact that the "hatchery" alone has attributes which give it a commercial and industrial aspect rather than an agricultural one.  Aside from the artificially induced hatching of eggs and the care and feeding of newly born chicks for a very brief period, not one of the operations usually associated with a "farm" is conducted there.  Under such circumstances where the "hatchery" alone was considered, the court held it not to be a "farm" in *Wilson* v. *Oklahoma Employment Security Commission* (1951), 204 Okla. 501, 231 P. (2nd) 664.  We need only inquire whether or not the "hatchery" by integration into the operation of several farms has lost its status as an independent commercial activity.

We cannot agree with the contention of the appellant that the farms of the contract growers are "operated" by it with-

in the meaning of the statute and it seems important that 90% of the company's chicks are raised on the farms of these completely independent growers. In short, the appellant's business consists almost entirely of three parts, (a) the buying of eggs from independent producers, (b) the hatching of eggs at appellant's "hatchery," and (c) the raising of the birds by contract with independent farmers. We see here no integration of the "hatchery" operations into the operations of a "farm" or "farms" owned or operated by the appellant. In addition, as we have seen, the company raises about 10% of its eggs for hatching in a leased henhouse on a farm, all the other operations of which are conducted independently by the farmer lessor; and the company raises about 10% of the chicks on its own farms. The latter activities are so limited in scope when balanced against the company's method of conducting most of its business that they seem incidental thereto and entirely inadequate to deprive the "hatchery" of its commercial status.

The legislature in 1957 could have had no other purpose than to restrict the scope of the agricultural exemption to rather narrow limits. The language employed closely limited exempt employment to services performed "on a farm in the employ of the operator of such farm," quite significantly eliminating the specific exemption previously given to services in connection with the "hatching of poultry" wherever performed. In 1956 we had held that the exemption afforded by the then existing law extended to services of employees of a concern like this appellant when rendered on the farms of the contract growers. *Maplewood Poultry Co.* v. *M. E. S. C.,* 151 Me. 467. In that case, speaking of the "broiler" industry, we said at page 472:

> "It may be necessary that because of the tremendous growth of this industry in Maine, in a comparatively few years, and the necessary employment of possibly hundreds of persons, that the law should be changed to cover them. However,

that is not for this court; that duty devolves on the legislature to amend the law, if it sees fit, by what it may deem to be appropriate legislation."

Whatever the legislative motivation may have been, the language of the 1957 amendment was certainly calculated to remove many employees of the industry from the scope of the exemption. We are satisfied that until the exemption was again broadened in 1959, the legislature intended that the words "on a farm in the employ of the operator of such farm" should be given the somewhat restricted meaning which we have attributed to them in this opinion.

*Appeal denied.*

*Judgment for the Commission.*