ARKANSAS VALLEY INDUSTRIES, INC. *v.* BILL LANEY, COM-
MISSIONER OF LABOR; LOIS L. SCOTT; AND RAYMOND
STANDRIDGE

5-4147 412 S. W. 2d 817

Opinion delivered March 27, 1967

*Rose, Meek, House, Barron, Nash & Williamson,* for
appellant.

*Herrn Northcutt* and *Luke Arnett,* for appellee.

J. FRED JONES, Justice. This is an appeal by Arkan-

sas Valley Industries, Inc. from a decision of the Pulaski County Circuit Court affirming a ruling of the Board of Review of the Arkansas Employment Security Division holding that appellees, Louis L. Scott and Raymond Standridge, former employees of Arkansas Valley Industries, Inc., are entitled to unemployment benefits under the Arkansas Employment Security Act, and that Arkansas Valley Industries, Inc. is liable for contributions under the Act on wages paid to the appellees.

This case and the case of Hanford Produce Co. v. C. A. Clemmons, Lucille K. Howard and Bill Laney, *Commissioner of Labor,* appear here at the same time. The appellant in the Hanford case claimed exemption under Ark. Stat. Ann. § 81-1103 subsection (i) (6) (B) (Repl. 1960), as well as § 81-1103 subsection (i) (6) (O), and the appellant in the case at bar claims exemption from coverage under § 81-1103 subsection (i) (6) (O) only.

Appellant relies on two points for reversal, as follows:

"1. The Arkansas Employment Security Act exempts from coverage any service exempt under the terms of the Federal Unemployment Tax Act, 26 U.S.C.A. 3306.

"2. The services and work performed by Appellees, Scott and Standridge, constitute agricultural labor and, are, therefore, exempt from coverage under the Arkansas Employment Security Act. Acts 1941, No. 391."

The points relied on in this case were actually disposed of more in detail in the Hanford Produce Co. case, supra, so the legislative history of the Arkansas Employment Security Act will not be reiterated here.

The facts of this case and the contention of the appel-

lant are clearly set out in its brief, and we adopt them as our own for the purposes of this opinion.

"AVI is engaged, among other things, in the production of poultry. It owns a few farms on which poultry is raised. Most of the poultry it produces, however, is through the contract grower system. Under this system, the poultry is raised by independent growers under contract wtih AVI. To insure that the poultry will be of the highest grade, certain services are supplied to the growers by AVI. These services generally consist in checking the health, feed, and housing of the flock and in supplying managerial advice to the growers. AVI supplies these services through its employees who visit the contract growers' farms where the necessary services are provided.

"The Appellees were employed by AVI to supply these services. Their specific duties were as follows:

"*Louis L. Scott*—Until April 15, 1964, Scott was a farm manager who supervised the raising of cattle, and the planting and harvesting of crops on AVI owned farms. After April 16, 1964, he was a broiler serviceman, whose duties included the checking of broilers each week, the vaccination of the chickens, the testing and treating of the chickens for any disease, and the overall management of the broilers. Scott, on occasion, provided water for the chickens and other services necessary for the successful raising of the chicken. Most of these services were performed on farms other than those owned by AVI. The last day on which Mr. Scott worked for AVI was February 5, 1965.

"*Raymond Standridge*—From March 22, 1964 to October 9, 1964, Standridge was employed as a member of a broiler service crew. He ran blood tests on chickens, transferred flocks from one farm to another, repaired chicken houses on the farms, did some cleanup

work in the chicken houses, and caught and cooped chickens when they were to be transferred from one farm to another. Most of these services were performed on farms owned by persons other than AVI.

"Appellant contends that Appellees were engaged in 'agricultural labor' which is exempted from coverage under Ark. Stat. Ann. § 81-1103 (i) (6) (O) (Repl. 1960) by reference to the Federal Unemployment Tax Act, 26 U.S.C.A. § 3306 (c) (1) Int. Rev. Code of 1954 § 3306 (c) (1), and therefore, that appellant is not liable for contributions with respect to wages paid to the appellees."

We agree that appellees were engaged in "agricultural labor" under the decision of *Maplewood Poultry Co. v. Maine Employment Security Commission,* 151 Me. 467, 121 A. 2d 360, cited by the appellant. However, appellees are not precluded from receiving benefits under Ark. Stat. Ann. § 81-1103 (i) (6) (B) under the decision of *C. M. T. Company* v. *Maine Employment Security Commission,* 163 A. 2d 369, where the Supreme Court of Maine again construed its statute after it had been amended to conform substantially with our own.

Appellant's only contention here is that the employment or service in which the appellees were engaged was exempt under the Federal Unemployment Tax Act, 26 U.S.C.A. 3306 (c) (1) as referred to in the last one sentence paragraph of Ark. Stat. Ann. § 81-1103 (i) (6) (O)

Ark. Stat. Ann. § 81-1103 (5) (i) defines employment as follows:

" 'Employment' means any services performed * * *." and 81-1103 (i) (6) insofar as it relates to the problem here, is as follows:

"(6) Exempted Employment. The term 'employment' shall not include—

(A) Domestic service in a private home.

(B) Services performed in the employ of an owner or tenant operating a farm, in connection with the cultivation of the soil, the harvesting of crops, or the raising, feeding, or management of livestock, bees or poultry, or in connection with the processing, packing or marketing of the produce of such farms as an incident to ordinary farming operations, and services performed in the ginning of cotton.
\* \* \*

"(O) Service performed in the employ of a corporation, community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual.

"Also any service or employment now exempt under terms of Federal Unemployment Compensation laws so long as the same is exempt under Federal law."

Section 26 U. S. C. A. 3306 (8) (c) defines employment as follows:

"For the purposes of this chapter, the term 'employment' means any services performed \* \* \* except—\* \* \* (1) Agriculture labor [as defined in subsection (k)]." Section 26 U.S.C.A. 3306 subsection (k) is as follows:

"(k) Agricultural labor,—For purposes of this chapter, the term 'agricultural labor' includes all service performed—

(1) on a farm, in the employ of any person, in

connection with cultivating the soil, or in connection with raising or harvesting any agricultural or horticultural commodity, including the raising, shearing, feeding, caring for, training, and management of livestock, bees, poultry, and fur-bearing animals and wildlife.''

So the question here, reduced to its lowest denominator, is whether the appellees are entitled to unemployment benefits because their services in agricultural labor *were not* performed in the employ of *an owner or tenant operating a farm* under the State law, or whether they *are not* entitled to unemployment benefits because their services in agricultural labor *were* performed on a farm, *in the employment of any person* under the Federal law.

Appellant seems to concede that the Federal Congress has not pre-empted the State Legislature in the matter of coverage and exemptions in the field of employment security legislation.

Through the legislative process, Arkansas has enacted its own statutory provisions for agricultural exemptions under its employment security laws as above set out. The coverage is broader and the exemptions narrower under the State law than under the Federal law, 26 U.S.C.A. 3306 (8) (c) and (k), supra.

When first enacted, both the Federal Statute, U. S. Stat. at Large 74th Cong. 1935-1936, Title IX, § 907 (c) (1), and State Statute, Acts of Arkansas 1937, Act 115, exempted all *"agricultural labor"*, but by legislative amendments only "services performed in the employ of an owner or tenant operating a farm" are now exempt from the term "employment" under the State law, Ark. Stat. Ann. § 81-1103 (i) (6) (B), supra, and "all services performed on a farm, in the employment of any person" constitute the "agricultural labor" now excepted from the term "employment" under the Federal law, 26 U. S. C. A. 3306 (8) (c) (1) (k), supra.

Appellant argues that by the last, one sentence paragraph, in § 81-1103 (i) (6) (0), supra, the Arkansas Legislature adopted the broader exemption provision of the Federal law, and the more narrow exemption specifically provided in the State law no longer applies. We do not agree that such was the intent of the Arkansas Legislature in amending the 1937 Act by Act 391 of 1941, and we are so holding in the case of *Hanford Produce Co. v. C. A. Clemmons, et al*, 242 Ark. 240, 412 S. W. 2d 828.

The judgment of the trial court is affirmed.

Affirmed.

FOGLEMAN and BYRD, JJ., dissent.

JOHN A FOGLEMAN, Justice, dissenting. I respectfully dissent from the opinion of the majority in this case for the reason that proper construction of Ark. Stat. Ann. § 81-1103 (i) (6) (B) exempts the activities of these employees from the application of the Act. What I contend is the proper construction of that Act is set out in my dissenting opinion in *Hanford Produce Company v. C. A. Clemmons, et al* 242 Ark. 240, 412 S. W. 2d 828, handed down on this date. I agree with the majority that no exemption can be based upon Ark. Stat Ann. § 81-1103 (i) (6) (0), but for an entirely different reason. If the last sentence of that sub-section of the Act is given the construction placed upon it by the majority, our General Assembly has never engaged in a greater exercise in futility than by adding this sentence. I agree that the word "also" means something has been added. According to Black's Law Dictionary, it means "besides, as well, in addition, likewise, in like manner, similarly, too, withal, some other thing, including, further, furthermore, in the same manner, moreover, and nearly the same as the word 'and' or 'likewise'." How could anything be added to further exempt the services set out in the first sentences? If they are exmpt, they are completely exempt and it seems obvious to me that adding the second sen-

tence could not add anything. What could have been overlooked if they were completely exempt? The majority does not even suggst a possibility.

It is my opinion that this sentence does not afford an exemption to appellant because it is clearly unconstitutional, being in violation of Article 5, § 23 of the Arkansas Constitution, which reads:

"No law shall be revived, amended, or the provisions thereof extended or conferred by reference to its title only; but so much thereof as is revived, amended, extended or conferred shall be reenacted and published at length."

In *Watkins* v. *Eureka Springs,* 49 Ark. 131, 4 S. W. 384, this court held that another section of the act adopting the same method of *procedure* for calling in city warrants as provided for counties in like cases was constitutional but that § 4 of the Act undertook to extend to cities and towns the positive provisions of the law applicable to counties by a general reference to the prior law and was unconstitutional.

This problem is treated extensively in *State* v. *Armstrong,* 31 N. M. 220, 243 P. 333 (1924), opinion on rehearing at 243 P. 346, wherein the *Watkins* case is cited as authority. The New Mexico constitutional provision is identical to ours, except for the omission of the words "conferred by". The New Mexico court called the rule announced in the *Watkins* case and followed in *Farris* v. *Wright,* 158 Ark. 519, 250 S. W. 889, the "Arkansas rule" and found that the Arkansas court had adhered to the rule in *White* v. *Loughborough,* 125 Ark. 57, 188 S. W. 10, and *Poe* v. *Street Improvement Dist. No.* 340, 159 Ark. 569, 252 .S W. 616, and not departed from it in *Common School District* v. *Oak Grove Special School Dist.,* 102 Ark. 411, 144 S.W. 224; *State* v. *McKinley,* 120 Ark. 165, 179, S.W. 181; *House* v. *Road Improvement Dist.,* 154 Ark. 218, 242 S.W. 68. They held unconstitu-

tional a New Mexico Act in which "the penal provisions of the National Prohibition Act are hereby adopted" and "all Acts or .omissions prohibited or declared unlawful by the Eighteenth Amendment to the Constitution of the United States or by the National Prohibition Act are hereby prohibited and declared unlawful and violations thereof are subject to the penalties provided in the National Prohibition Act".

The rule was also applied in *Rider* v. *State,* 132 Ark. 27, 200 S. W. 275, where the application of Act 310 of 1909 was sought to be extended to two additional townships of a county by reference to the Act only. In *Hollis and Company* v. *McCarroll,* 200 Ark. 523, 140 S. W. 2d 420, this court defined the meaning of the word "extended" in this section and quoted extensively from *State* v. *Armstrong,* 31 N. M. 220, 243 P 333 (1924). The definition is as follows:

"* * * The term 'extended', as used in Section 23 of art. 5 of the constitution has reference to an attempt by the law-making body (a) to add something to the text of a preexisting law, or (b) to impose conditions upon another statute."

It seems to me that the conclusion is inescapable that the Arkansas Legislature, by adding the second paragraph in 2 (6) (0) of Act 391 of 1941 [Ark. Stat. Ann. § 81-1103 (i) (6) (0) (Repl. 1960] sought to add employment exemptions "under terms of Federal Unemployment Compensation laws so long as exempt under Federal law" to the text of the preexisting law and to impose conditions of the Federal laws on the Arkansas Statute, and, thus, let the United States Congress legislate exemptions or remove exemptions for the State of Arkansas. Furthermore, I do not see how it could be said that the General Assembly did not at ^mpt to "confer" exemptions provided for in the Federal laws referred to.

Particularly in view of the blank check to Congress therein provided, this is obviously the kind of "blind leg-

islation'' sought to be prohibited. This also violates § 1 of Amendment No. 7 to the Constitution of Arkansas by which the legislative power of the people of Arkansas is vested in the General Assembly except as reserved to them therein. No closer parallel could be found than in the decision of this court holding Act 115 of 1955 an unconstitutional delegation of legislative powers. *Crowley* v. *Thornbrough*, 226 Ark. 768, 294 S. W. 2d 62. This Act required the payment to mechanics and laborers minimum wages based upon wages that will be determined by the Secretary of Labor of the United States to be prevailing for such classes of mechanics and laborers in the particular area in which the work was to be performed. If that Act was an unconstitutional delegation of legislative power, so is the sub-section in question here.

There is a further reason why this sub-section is invalid, which also serves to indicate the hazard of this type of legislation. The reference is to the ''terms of Federal Unemployment Compensation laws.'' What are these? Reference to the ''Populer Name Table'' in USCA gives references only to ''Federal Unemployment *Tax* Act'' (1939) and ''Federal Unemployment Compensation *Tax* Act'' (1954). If either of these can be the law to which reference is intended, which one is it? The one passed before our Act or the one passed after it? If the first, then do the amendments passed in 1944, 1945, 1946 and 1954 apply? How can Title 26, Chapter 23, § 3306 be the law intended to apply here since it wasn't adopted until 1954? A search of ''Federal Acts by Popular Names or Short Titles'' compiled by Shephard's Citations discloses ''Federal Unemployment Insurance Contributions Act'' and ''Federal Unemployment Tax Act'' perhaps the same act originally, the former being carried in Code Title 26, § 3101, et seq, and the latter in § 3301, et seq. Reference to these sections shows various amendments since the adoption of our Act. In short, what are ''Federal Unemployment Compensation laws''? [Emphasis ours]

I would reverse the judgment of the circuit court, the Board of Review and the Appeals Referee.

I am authorized to state that Mr. Justice Byrd joins in this dissent.