THOMAS R. STOVER, ACTING COMMISSIONER OF LABOR
*v.* SHIRLEY JEAN DEERE ET AL

5-5367                                    461 S. W. 2d 393

Opinion delivered November 2, 1970
[As modified on denial of rehearing January 25, 1971.]

*Herrn Northcutt,* for appellant.

*McMath, Leatherman, Woods & Youngdahl* and
*John F. Foster, Jr.,* for appellees.

GEORGE ROSE SMITH, Justice. This is an unemploy-
ment compensation case in which the four appellees,
employees of Warwick Electronics, Inc., each filed claims
for one week of benefits. The claims were uniformly
denied by the local office, the Appeals Tribunal, and
the Board of Review, on the ground that the claimants
had all received vacation pay for the week in question.
Ark. Stat. Ann. § 81-1106 (f) (3) (Supp. 1969). The circuit
court, however, reversed the administrative rulings and
ordered that the benefits be paid. The acting Commis-
sioner of Labor brings the case to this court.

The controversy calls for a construction of the statute in the light of the union contract between the employer and the local union to which the appellees belong. That contract empowers the employer to fix a vacation period during the months of June, July, or August, and if it is deemed advisable, to shut down the plant during that period. All vacations may be scheduled for that period, except for employees who are required to work during the shutdown. To be eligible for vacation pay an employee must have worked for at least 40 weeks during the preceding work year, measured from May 1st to May 1st. All such eligible employees are divided into three classes: (1) Those having up to two years of service with the company receive as vacation pay 2% of their total wages during the preceding year, with a guaranteed minimum amounting to 40 hours' pay. (2) Those having from two to ten years of service receive 4% with a guaranteed minimum of 80 hours' pay. (3) Those having over ten years of service receive 6% with a guaranteed minimum of 120 hours' pay.

In 1968, the year in question, the employer elected to shut down the plant for two weeks. The four claimants fell within the first class of employees, having less than two years of service with the company. Each one of them received vacation pay that did not actually exceed the guaranteed minimum of 40 hours' pay. Forty hours being the equivalent of one week's work at straight time, the appellees filed claims for unemployment compensation for the second week of the shutdown.

The statute, cited above, provides that a person shall be disqualified for unemployment compensation benefits for any week with respect to which he receives vacation pay. For reversal of the circuit court's judgment the Commissioner argues that under the contract the claimants received vacation pay in a predetermined amount for the entire two-week shutdown. Hence, argues the Commissioner, the claimants all received vacation pay for the two weeks, albeit at a weekly rate amounting to only half of their regular working scale.

We express no opinion about what might be the merits of the Commissioner's argument if the union contract had specifically provided that the annual shutdown should be for exactly two weeks. That was not the case. The contract allowed the employer, within its uncontrolled discretion, to fix a vacation period during the months of June, July, or August, and to shut the plant down during that period. Thus the company might, in 1968 or any other year, have fixed a vacation far in excess of two weeks and have shut the plant down for such a period. The Commissioner's argument would then deny benefits to these claimants, even though they might have received vacation pay amounting to one week's regular remuneration for a shutdown lasting, say, for six weeks.

Upon the actual facts of this case we think our decision to be governed by principles laid down in two earlier cases. In *Harmon* v. *Laney,* 239 Ark. 603, 393 S. W. 2d 273 (1965), we held that employees who received no vacation pay while the factory was shut down pursuant to the union contract were not voluntarily unemployed within the meaning of the statutory disqualification. That decision indicates that these appellees were not voluntarily unemployed, had such a contention been made by the Commissioner.

In the *Harmon* case the idled employees received no vacation pay, while here the appellees each received the equivalent of a week's pay. In that respect the present case is similar to *Thornbrough* v. *Gage,* 234 Ark. 15, 350 S. W. 2d 306 (1961), where the claimants received substantial dismissal pay when the plant was shut down permanently. We held the employees to be disqualified for the length of time for which their regular wages would have equalled their dismissal pay. Dismissal payments and vacation pay are treated alike in the statute. Section 81-1106 (f) (1) and (3). We therefore hold, as the circuit court did, that the appellees' vacation pay constituted a disqualification for only one week.

The Commissioner suggests in his reply brief that the claimants failed to prove that they had registered for work and were available for work during the week in question. Ark. Stat. Ann. § 81-1105 (b) and (c). At the oral argument counsel also argued that the week in question might be a waiting period during which benefits were not payable. Section 81-1105 (d).

We cannot approve that contention, which would allow the case to be tried piecemeal. The statute requires that in the first instance both the monetary and the nonmonetary determinations be made "promptly." Ark. Stat. Ann. § 81-1107 (c) (1) (A) and (B). Similarly, notice of those determinations must be given "promptly" to the claimant. Id., (c) (3) (A) and (B). We are unwilling to allow the Commissioner to raise at this late date an issue that should have been promptly decided in the first instance or that should at least have been unmistakably reserved in the original determination. The claimants cannot now be fairly required to start all over again in their quest for benefits under the statute.

Affirmed.