Ruth EAST and A Class of Citizens Seeking Unemployment Compensation, Plaintiffs,

v.

David PRYOR, Governor, State of Arkansas; Henry L. McHenry, Administrator, Arkansas Employment Security Division; Charles L. Daniels, Arkansas Department of Labor; Edwin L. Dunaway, Chairman, Board of Review; Tommie L. Landers, Member, Board of Review; J. M. Park, Member, Board of Review; John V. Turner, Chief Appeals Referee, Employment Security Division and F. Ray Marshall, Secretary, U. S. Department of Labor, Defendants.

No. LR–C–77–346.

United States District Court, E. D. Arkansas, W. D.

Jan. 20, 1981.

Richard Quiggle, James R. Cromwell, Central Arkansas Legal Services, Inc., Little Rock, Ark., for plaintiffs.

R. B. Friedlander, Asst. Atty. Gen. of Ark., Thelma Lorenzo and Hern Northcutt, Employment Security Div., Carol L. Lincoln, Ark. Dept. of Labor, George W. Proctor, U. S. Atty., A. Douglas Chavis, Asst. U. S. Atty., Little Rock, Ark., Harriet A. Gilliam, U. S. Dept. of Labor, E & T Services, Washington, D. C., for defendants.

MEMORANDUM AND ORDER

WOODS, District Judge.

STATEMENT

Plaintiff Ruth East brought this action on December 2, 1977 based on alleged violations of 42 U.S.C. §§ 1981, 1983 and 1988 and the due process and equal protection provisions of the United States Constitution. The complaint requested a declaratory judgment pursuant to 28 U.S.C. §§ 2201, 2202, 1361 and Fed.R.Civ.P. 57. Although plaintiff filed the lawsuit on behalf of herself and a "Class of Citizens Seeking Unemployment Compensation", such class has never been certified. Indeed, the plaintiff Ruth East has not moved for class certification as provided by the general orders of this court or by the specific order issued in the instant litigation (see Letter/Order dated March 26, 1980).

Plaintiff Ruth East was initially denied unemployment compensation after a determination that she had been discharged from the Pulaski County Health Department for willful misconduct on March 20, 1977. Her alleged willful misconduct consisted of her refusal to type a letter as directed by her employer, Dr. Gordon Oates, the Pulaski County Health Officer. Plaintiff sought and obtained a hearing before the Chief Appeals Referee on September 22, 1977, at which time he upheld the Agency determination. Plaintiff appealed the Referee's decision to the Board of Review. While the appeal was pending, she filed the above-mentioned Federal complaint. On January 31, 1978 the Board of Review reversed the Referee's decision that plaintiff had been guilty of willful misconduct and awarded her benefits. The decision of the Board of Review is attached hereto as Exhibit "A".

## THE APPLICABLE STATUTES

To be eligible for benefits, a claimant must file a claim with a local office of the Employment Security Division as prescribed in Ark.Stat.Ann. § 81–1105 (Repl.Vol.1976). If dissatisfied with the determination of the local office, claimant has a right within fifteen days to appeal to the Appeals Tribunal and obtain a full evidentiary hearing before a referee. Ark.Stat.Ann. § 81–1107(d)(2) (Repl.Vol.1976).

If dissatisfied with the decision of the Appeals Tribunal, the claimant may then appeal to the Board of Review. Ark.Stat. Ann. § 81–1107(d)(3) (Repl.Vol.1976). The Board of Review is composed of three members, one of whom represents employees (in Arkansas this member has historically been closely affiliated with organized labor), and one represents employers. The third member is the Chairman and pursuant to Statute is "a person who, because of his vocation, occupation or affiliation may be deemed not to be representative of employers or employees." Ark.Stat.Ann. § 81–1107(d)(1) (Repl.Vol.1976). (This individual has generally been a lawyer). At the time period relevant herein, claimant had a right of appeal to Circuit Court from the Board

of Review. Ark.Stat.Ann. § 81–1107(d)(7) (Repl.Vol.1976). In the event of an adverse decision, claimant could appeal directly from Circuit Court to the Supreme Court of Arkansas. Ark.Stat.Ann. § 81–1107(d)(7) (Repl.Vol.1976). Now an appeal in an unemployment case goes directly from the Board of Review to the Arkansas Court of Appeals, an intermediate appellate court established by Arkansas in the 1978 general election. Ark.Stat.Ann. § 81–1107(d)(7) (Repl.Vol.1976 as amended in 1979). One of the principal reasons for this change was to permit unemployment compensation claimants and worker's compensation claimants to obtain a quick review of their cases. A claimant can obtain review by certiorari to the Supreme Court of Arkansas and thence by certiorari even to the Supreme Court of the United States.

At the time unemployment benefits for Mrs. East were denied by the Agency, she had five separate appellate steps available. The initial stages of this elaborate procedure are required by 42 U.S.C.A. § 503(a)(3), which provides: "The Secretary of Labor shall make no certification for payment (of Federal funds) to any State unless he finds that the law of such state . . . includes provisions for . . . (3) opportunity for a fair hearing, before an impartial tribunal, for all individuals whose claims for unemployment compensation are denied." The original Federal legislation was enacted in 1935, and the original Arkansas enabling legislation was passed in 1937. This legislation was passed to ameliorate the tragic unemployment of the Great Depression. The appeals procedures provided in these statutes has been repeatedly utilized by claimants for more than forty years. Claimants have been quite successful at various stages of the appellate procedure. For instance, in this case the plaintiff and five of the eight putative intervenors won benefits. There are a number of occasions where claimants have successfully appealed to the Appeals Tribunal and the latter's decision has been sustained all the way to the Supreme Court of Arkansas—in other words, the agency made an administrative decision adverse to claimants but the Ap-

peals Tribunal reversed and was sustained through the Board of Review, Circuit Court and Supreme Court. See, e. g. *Terry Dairy Products Co. v. Cash*, 224 Ark. 576, 275 S.W.2d 12 (1955) and *Little Rock Furniture Mfg. Co. v. Thornbrough*, 227 Ark. 288, 298 S.W.2d 56 (1957). There have also been cases where claimants were not successful until they reached the Board of Review and the latter's decision was sustained by the Circuit Court and Supreme Court. See, e. g. *Arkansas Valley Industries, Inc. v. Laney*, 242 Ark. 261, 412 S.W.2d 817 (1967); *Thornbrough v. Schlenker*, 228 Ark. 1012, 311 S.W.2d 753 (1958); *Southern Lumber Co. v. Cash*, 226 Ark. 406, 290 S.W.2d 11 (1956); *Rainfair, Inc. v. Cobb*, 229 Ark. 37, 312 S.W.2d 906 (1958); *Harding Glass Co. v. Crutcher*, 244 Ark. 618, 426 S.W.2d 403 (1968); *Ladish Co. v. Breashears*, 263 Ark. 48, 563 S.W.2d 419 (1978). In other cases the claimant did not secure a favorable decision until the appeal reached Circuit Court. See, e. g. *Commissioner of Labor v. Renfroe*, 253 Ark. 380, 486 S.W.2d 73 (1972) and *Stover v. Deere*, 249 Ark. 334, 461 S.W.2d 393 (1971). In many other cases claimants lost at all stages of the appellate procedure until they reached the Supreme Court of Arkansas. See, e. g. *Harmon v. Laney*, 239 Ark. 603, 393 S.W.2d 273 (1965); *Wade v. Thornbrough*, 231 Ark. 454, 330 S.W.2d 100 (1959); *Reddick v. Scott*, 217 Ark. 38, 228 S.W.2d 1008 (1950); *Hays v. Batesville Mfg. Co.*, 251 Ark. 659, 473 S.W.2d 926 (1971); *Battle v. Daniels*, 260 Ark. 683, 543 S.W.2d 477 (1976). Under the procedure adopted in Arkansas by a constitutional amendment and effective July 1, 1979, there is appeal directly from the Board of Review to the Court of Appeals. The claimant has successfully reversed the Board of Review in two recent cases, *Jackson v. Daniels*, 590 S.W.2d 63 (Ark.App. 1979) and *Deatherage v. Daniels*, 590 S.W.2d 62 (Ark.App.1979). In the latter case the claimant handled her appeal before the Court of Appeals *pro se.* In a case which was already at the Circuit Court stage when the above-described constitutional amendment became effective, the Court of Appeals reversed the Circuit Court

on an appeal by the claimant. *Kilgore v. Falls Church Animal Hospital*, 590 S.W.2d 671 (Ark.App.1979). The personnel of the Board of Review appointed under the statutes noted above, all of whom are defendants in this litigation, complied with the statutory requirements set forth, *supra.* The employee representative, Tommie L. Landers, has been a full-time labor union representative for thirty years. He is presently a Grand Lodge Representative of the International Association of Machinists. The employer representative, J. M. Park, is a Cabot, Arkansas banker. The Chairman and public representative, Edwin L. Dunaway, is a former Prosecuting Attorney, a former law professor at the University of Arkansas and a former Associate Justice of the Arkansas Supreme Court. It is obvious that the Board was composed of men of exceptionally high qualifications. The Appeals Referee, who heard Mrs. East's case, is a former County Judge of Pope County, who has been an Appeals Referee for over twenty-five years.

## MOOTNESS OF CLAIM

As noted above, the plaintiff Ruth East appealed her denial of benefits from the Appeals Tribunal to the Board of Review, which reversed the referee and granted her benefits. This case is clearly within the holding of the United States Supreme Court in *Employment Security Division v. Burney*, 409 U.S. 540, 93 S.Ct. 883, 35 L.Ed.2d 62 (1973). See also the order on remand by the U. S. District Court for the Northern District of Indiana. (*Sub nom. Hiatt v. Indiana Empl. Security Division*, Civ. No. 70 F122 (1973).) This court has had recent occasion to discuss the Article III requirement in the U. S. Constitution that there must be a "case or controversy" to vest the Federal Courts with jurisdiction. See *Ward v. Arkansas State Police*, 493 F.Supp. 1315 (E.D.Ark.1980) and *Gibson v. Dupree*, 501 F.Supp. 259 (E.D.Ark.1980). Reference is made to those cases and the authorities cited therein for a more comprehensive discussion of the mootness issue. The plaintiff, Ruth East, prematurely and

without exhausting her State remedies, filed the instant litigation, and when the Board of Review rendered its decision in her favor, her federal case clearly became moot.

## THE INTERVENTION OF ROY WITHERELL AND BOBBY ELLIS

■ On June 19, 1978 Bobby Ellis and Roy Witherell filed a motion to intervene in this litigation and are now being carried in the style of the case. However, we have been unable to find in the file or the docket entries any indication that these plaintiffs were given leave to intervene in this cause. The court takes judicial knowledge of the records of the Board of Review, which indicate that Bobby Ellis was awarded benefits on appeal to the Pulaski Circuit Court. His situation is thus identical to that of Mrs. East. Mr. Witherell's intervention is based on a delay in processing his claim through the appellate process. The court has ascertained that the Board of Review on remand from the Garland Circuit Court rendered a decision in Mr. Witherell's favor. Like the claims of Mrs. East and Mr. Ellis, Mr. Witherell's claim is also moot. Accordingly, the intervention of Bobby Ellis and Roy Witherell is denied and dismissed.

## THE INTERVENTIONS OF OLLIE JARED, LINDA HUNT, OZIE LAMPKIN, RADIE COOK, AND DAVID KEETON

On May 15, 1980 six other individuals attempted to intervene in this litigation. Three of them, Ozie Lampkin, Ollie Jared and David Keeton, won their cases and were awarded benefits at some stage of the appellate review, and their cases are now moot in accordance with the authorities cited, *supra*. Radie Cook and Linda Hunt were denied benefits by the Board of Review and did not appeal to Circuit Court, as was their right. Theodore Parker took his case all the way to the Supreme Court of Arkansas. His case is reported as *Parker v. Ramada Inn, et al*, 264 Ark. 472, 572 S.W.2d 409 (1978). Parker was employed as a cook at the Ramada Inn in North Little Rock on a shift from 2:00 p. m. to 10:30 p. m. He overslept and did not report to work or contact his employer until the following day, at which time he learned that the employer had employed another cook and considered him discharged. The Agency denied benefits to Parker on the ground of misconduct. Its determination was affirmed by the Appeals Tribunal, the Board of Review and the Circuit Court. On appeal to the Supreme Court, Parker claimed that the finding of the Board of Review was not supported by substantial evidence and that the employer defaulted by failing to appear at the Appeals Tribunal hearing. The Supreme Court found no merit in either contention and neither do we. "Appellant acknowledges that his presence might be vital to the employer's operations but contends that there is not a scintilla of evidence to support such a finding. We find no merit to this contention. It is common knowledge that a cook is essential to the operation of a restaurant and while the record does not show that appellant was the only cook, the record does show that appellant's position was important enough to his employer that a replacement was promptly employed." 572 S.W.2d 409, 411.

■ The intervention of these six plaintiffs is also denied and dismissed. First of all, the intervention was not timely filed. The motion to intervene was filed on May 15, 1980, almost two months after this court had by letter order of March 26, 1980 advised counsel that the case would be tried in the late summer or fall of 1980 (inadvertently delayed because the trial judge had an emergency appendectomy), that discovery was cut off as of July 1, 1980 and that counsel had sixty days thereafter to move for class certification. The determination of whether an intervention is timely is solely within the discretion of the trial court. *Janousek v. Wells*, 303 F.2d 118 (8th Cir. 1961); *Iowa State University Research Foundation, Inc. v. Honeywell, Inc.*, 459 F.2d 447 (8th Cir. 1972). *Nevilles v. EEOC*, 511 F.2d 303 (8th Cir. 1975). The factors to be considered by the trial court were set forth by the Court of Appeals of this Cir-

cuit in *McClain v. Wagner Elec. Corp.*, 550 F.2d 1115 (8th Cir. 1977).

Secondly, these six plaintiffs do not meet the requirements of Rule 24 of the Federal Rules of Civil Procedure. Clearly they have no standing to intervene as a matter of right under section (a). They could only qualify as permissive intervenors under subsection (b). We find that the claims of these six intervenors do not satisfy the requirements of Fed.R.Civ.P. 24(b). *United States Postal Service v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978); *Beach v. KDI Corp.*, 490 F.2d 1312 (3rd Cir. 1974).

Thirdly, "[I]ntervention will not be permitted to breathe life into a 'nonexistent' lawsuit." *Fuller v. Volk*, 351 F.2d 323, 326 (3rd Cir. 1965). This lawsuit has really been "nonexistent" since Mrs. East won her appeal to the Board of Review on January 31, 1978, less than two months after she filed her federal suit. The governing principle has been recognized not only by the United States Supreme Court, *U. S. ex rel Texas Portland Cement Co. v. McCord*, 233 U.S. 157, 34 S.Ct. 550, 58 L.Ed. 893 (1914) but also by the Court of Appeals of this Circuit in *Brictson Mfg. Co. v. Woodrough*, 284 F. 484 (8th Cir. 1922). "Intervention is ancillary and subordinate to the main cause of action . . . ." *Black v. Central Motor Lines, Inc.*, 500 F.2d 407, 408 (4th Cir. 1974).

## CONCLUSION

This case is an object lesson in why the Federal Courts are so crowded and why the litigation of important cases is delayed and not reached for months and even years. The filing of this lawsuit has cost the State and Federal Government thousands of dollars in the time and effort of their attorneys. Mrs. East filed this suit without waiting for a decision on her appeal to the Board of Review, which made a determination in her favor less than sixty days after her Federal suit was filed. She sued the United States Secretary of Labor, Governor of Arkansas, Administrator of the Arkansas Employment Security Division, Arkansas State Labor Commission, members of the Board of Review and the Chief Appeals Referee who had originally decided her case. Such a wide spectrum of defendants brought into the legal fray a battalion of talented attorneys and a paper war, the like of which has rarely been waged. The pleadings alone cover 332 pages in the files. This does not include a large amount of correspondence and several depositions. As befitting his station, the Secretary of Labor has been represented on the pleadings by six lawyers from the Solicitor's Office of the Department of Labor in Washington, D. C. Not to be outdone, the State of Arkansas has been represented by the present Attorney General, the former Attorney General and three Assistant Attorney Generals. During the course of this litigation, the Arkansas Department of Labor has had three lawyers, the Employment Security Division has had two lawyers. Because a U. S. Cabinet office was sued, both the former U. S. Attorney and the present U. S. Attorney have appeared in the litigation, as well as an Assistant U. S. Attorney. In other words, nineteen lawyers have appeared on the pleadings for the various defendants in this case. We do not denigrate their services. When public officials are sued, they must be represented by counsel. Counsel in this case have been diligent. They have submitted fine briefs and have explored every facet of this case. However, one must wonder whether this case is deserving of the time and talent that has been expended upon it. In the opinion of this court, it is a case totally without merit. Mrs. East was discharged for refusing to obey a direct order of her employer, the Pulaski County Health Officer. We would agree with Judge Dunaway, Chairman of the Board of Review, *dissenting*, that she was indeed guilty of misconduct and should have been denied benefits. Nevertheless, at the generous hands of a majority of the Board of Review, Mrs. East prevailed in her claim, and this case became moot within two months after she filed it. Mrs. East was represented by private counsel and by Central Arkansas Legal Services, Inc. We applaud the fine work done by legal aid

agencies in this state and elsewhere, but surely there must be clients who are more deserving of their time and talent than this plaintiff. Due to the untimely death of Judge Terry Shell, to whom the case was originally assigned, and its unassigned status because of vacancies in the complement of judges in the Eastern District of Arkansas, this case has had a long but undeserved life. That life is now ended. The original complaint of Mrs. East is dismissed with prejudice as moot, and the pending motions to intervene are denied and dismissed.

STATE OF ARKANSAS

BOARD OF REVIEW

ROOM 436, NATIONAL OLD LINE BUILDING

LITTLE ROCK, ARKANSAS

APPEAL NO. 77–BR–1722

DECISION

CLAIMANT (APPELLANT):

Ruth East, SS No. 432–94–6285
3501 West Tenth Street
Little Rock, Arkansas 72204

EMPLOYER:

Pulaski County Health Department
2901 West Roosevelt
Little Rock, Arkansas 72204

STATUTORY PROVISION INVOLVED:
   Section 5(b)(1) of the Arkansas Employment Security Law

The claimant appealed to the full Board of Review from a decision of the Appeal Tribunal which affirmed an Agency determination denying the claimant unemployment benefits under the provisions of Section 5(b)(1) of the Arkansas Employment Security Law, on the finding that she was discharged from her last work for misconduct in connection with the work.

The decision of the full Board of Review is rendered from the written record and the previous testimony, and from consideration of the oral argument presented in behalf of the claimant by her attorney, Richard Quiggle.

The full Board of Review met in session January 5, 1978.

From the record and testimony, the Board makes the following

FINDINGS OF FACT AND CONCLUSIONS OF LAW:

The sole issue before this Board is whether the claimant's refusal to carry out her employer's request to type a document for her personnel file was, under the circumstances of this case, such "misconduct in connection with [her] work" within the meaning of Section 5(b)(1) of the Arkansas Employment Security Law as to disqualify her from entitlement to unemployment benefits.

The claimant had worked as a clerk-typist I for the above-named employer from August 23, 1973 until she was discharged on February 23, 1977. The document which she refused to type on that occasion was a longhand account written by Dr. Gordon P. Oates, Pulaski County Health Officer, of a conference which he had on that day with the claimant concerning a possible transfer. In asking the claimant to type this document she was informed that before signing the document she could add any additional relevant information which she cared to. The claimant felt that a secretary in the office should have typed up this item which was to be placed in her personnel file. We do not question the employer's right to terminate the claimant on the basis of a clear act of insubordination. Our analysis, however, cannot end with a finding that insubordination occurred and that the termination might have been in the best interest of all concerned. In performing our duty to determine whether a disqualification for unemployment benefits has occurred, we must keep in mind that the unemployment insurance law is to be liberally construed to the end that its purposes are accomplished, which purposes include the abolition of a worker's insecurity due to unemployment. When it is contended that a claimant is subject to a disqualification

because he or she was discharged for "misconduct," it is clearly the duty, burden, and obligation of the employer to establish that the claimant committed a willful or wanton act in complete disregard of his or her employer's interest and in disregard of the duties and obligations owed to the employer. We conclude that in this case, the employer failed to meet that burden. See *Annot., Employee's Insubordination as Barring Unemployment Compensation*, 23 A.L. R.3d 1333 (1969).

A lengthy discussion of the claimant's allegations concerning race and/or sex discrimination is unnecessary. Clearly, a person who is discharged from his or her employment as a result of such discrimination by the employer would not be disqualified from entitlement to unemployment benefits. But in this case, while we find that the claimant was not guilty of such "misconduct in connection with [her] work" as to constitute a disqualification for unemployment compensation within the meaning of Section 5(b)(1) of the Law, we find nothing in the record to indicate that discrimination was a basis for her termination. We note that the claimant was allowed to present evidence in support of her discrimination claim at the hearing before the Appeal Tribunal.

We specifically find that the claimant was afforded a full and fair hearing before the Appeals Referee and that both parties were given the opportunity to present sufficient relevant evidence to enable the Appeal Tribunal to make an informed decision and for this Board adequately to review that decision. We further specifically find that the Appeals Referee was fair and impartial toward both parties and exhibited absolutely no prejudice or bias.

Section 5(b)(1) of the Arkansas Employment Security Law provides that an employee who is discharged for misconduct in connection with the work shall be disqualified from receiving unemployment benefits.

The Board of Review finds that the actions of the claimant in this case did not constitute disqualifying misconduct within the meaning of Section 5(b)(1) of the Law.

Reversed. The decision of the Appeal Tribunal which affirmed an Agency determination denying the claimant benefits under Section 5(b)(1) of the Arkansas Employment Security Law is reversed on the finding that she was discharged for reasons other than misconduct in connection with the work within the meaning of that section of the Law. She is allowed benefits if otherwise eligible.

/s/Tom Landers
Tom Landers, Member
/s/J. M. Park
J. M. Park, Member

I dissent from so much of the Board's decision as allows the claimant benefits on the finding that her actions did not amount to misconduct within the meaning of Section 5(b)(1) of the Arkansas Employment Security Law. In my opinion, her refusal to type the document in question constituted willful insubordination which disqualified her from receiving benefits. With the other findings of fact and conclusions of law contained in the foregoing decision, I am in complete accord.

/s/Edwin E. Dunaway
Edwin E. Dunaway, Chairman

January 31, 1978
Mailing Date