LITTLE ROCK FURNITURE MANUFACTURING COMPANY *v.* COMMR. OF LABOR.

5-1120 298 S. W. 2d 56

Opinion delivered February 4, 1957.

*Moore, Burrow, Chowning & Mitchell,* for appellant.

*Luke Arnett* and *McMath, Leatherman & Woods,* for appellee.

ED. F. McFADDIN, Associate Justice. This is an appeal from a judgment of the Circuit Court in two consolidated cases involving claims arising under the Employment Security Act (§ 81-1101 *et seq.* Ark. Stats.). The questions presented in the two cases are materially different, so we refer to the cases by the numbers in the Circuit Court.

### *Circuit Court Case No.* 41167.

On October 14, 1953, certain employees of the appellant, Little Rock Furniture Manufacturing Company (hereinafter called "Company"), went on strike and established a picket line. Among such strikers were the fifty-five workers[1] — hereinafter called "claimants" — who are appellees in this Court. C. R. Thornbrough, as Commissioner of Labor, is also an appellee. The strike was called by the Labor Union, in an effort to obtain certain desired economic benefits. So far as the record here shows, the strike was not in violation of any contract. On October 23, 1953, the Company notified all the claimants by letter that work would be resumed on November 2nd and claimants' places would be filled by other workers on that date. The Company did resume work on November 2nd.

On November 27th the Union called off the strike; and on November 30th the strikers returned for work. Some of the strikers were used, but these fifty-five claimants were not put back to work because their jobs had been filled. Claimants then filed application for unemployment benefits accruing after November 30th, when they had sought to return to work. The claims are under the Employment Security Act, which is § 81-1101 *et seq.* Ark. Stats. and amendments to and including Act No. 162 of 1953 — but, of course, not including Act No. 395 of 1955, because the claims were filed in November, 1953. Therefore, our decision in this case is governed by the law that was in force in November, 1953.

---

[1] Originally there were fifty-eight claimants, but three claims were withdrawn: these being Creed Ashley, Alberta Chandler and Robert Coates, Jr.

The Company, in resisting the efforts of the claimants to obtain unemployment benefits, insisted that the claimants had *voluntarily left their work* when they went on strike and were disqualified from drawing benefits for ten weeks after the filing of the claims. The Company relied on § 81-1106(a), as amended by § 3 of Act No. 162 of 1953, which section, with amendment, reads:

"If so found by the Commissioner, an individual shall be disqualified for benefits: (a) if he voluntarily and without good cause connected with the work, left his last work. Such disqualification shall be for ten weeks of unemployment as defined in sub-section 'I' of this section."

The Company contended that each of these fifty-five claimants, voluntarily and without good cause, went on strike and should therefore be disqualified for ten weeks from November 30, 1953, the date each sought to return to work. The supervisor of the local office of the Employment Security Division held the claimants to be so disqualified; and claimants appealed. The Appeal Tribunal (a hearing agency set up under § 81-1107 of the Employment Security Act) held that the ten weeks' disqualification provision did not apply to a worker who went out on strike; reasoning that when such worker offered to return to work and could not obtain employment, he was entitled to the unemployment benefits without the ten-weeks' disqualification provision applying to him. The Board of Review (§ 81-1107 Ark. Stats.) affirmed the holding of the Appeal, Tribunal; the Company sought judicial review under § 81-1107(d) (7); the Circuit Court agreed with the administrative holding; and the case is here on appeal. So the issue in Circuit Court Case No. 41167 is whether the ten weeks' disqualification under § 81-1106 Ark. Stats. applies to a person who engaged in a labor dispute and later ended the strike and sought to return to work.

We emphasize that this case does not involve any claim for benefits during the time the workers were on strike. It involves only claims for benefits *after* the

strike had been ended and the claimants tried to go back to work. As the law existed at the time this case arose, § 81-1106(d) related to disqualifications in labor disputes,[2] and § 81-1106(a) related to one who voluntarily left work. Our original Employment Security Act was Act No. 155 of 1937. It has frequently been amended. Many states have comparable acts. These are listed following § 81-1101 in the Annotated Volume of Arkansas Statutes. The purpose of all of such Employment Security Acts is an effort to afford compensation under some circumstances to a covered worker who is unemployed. Section 81-1101 Ark. Stats. gives the declaration of state public policy regarding our Act, and is worthy of study. In § 81-1102 of the Act the Legislature declared its intention to provide for the carrying out of the purposes of the Act in cooperation with the appropriate agencies of other states and of the Federal Government. The Act must be given an interpretation in keeping with the declaration of state policy.

Some states hold that when a worker goes out on a strike he has ''voluntarily left his work'' and so is subject to the disqualification period (varying in weeks from state to state). For cases so holding, see: *Walgreen Co.* v. *Murphy,* 386 Ill. 32, 53 N. E. 2d 390; *Baker* v. *Powhatan Mining Co.,* 146 Ohio St. 600, 67 N. E. 2d 714; and see also cases collected in Sec. 3 of the Annotation in 28 A. L. R. 2d 294.

Other states hold that the spirit of the Act is not to penalize a worker who follows the Union's orders and goes on a strike, but to afford such worker unemployment benefits when he offers to return to work and is unable to find it. In other words, when he offers to return to work and can find no work, he then becomes involuntarily unemployed. For cases looking in this direction, see: *T. R. Miller Mill* v. *Johns,* 261 Ala. 615, 75 So. 2d 675; *M. A. Ferst Ltd.* v. *Huiet,* 78 Ga. App. 855, 52

---

[2] By Act No. 395 of 1955, the provision found in § 81-1106(d) was deleted from that section and the matter of labor disputes was placed in § 81-1105 Ark. Stats. The effect of this change by the subsequent legislation is not before us in this case.

S. E. 2d 336; *Intertown Corp.* v. *Appeal Board,* 328 Mich. 363, 43 N. W. 2d 888; and *Great A. & P. Tea Co.* v. *New Jersey Dept.,* 29 N. J. Super. 26, 101 Atl. 2d 573.

A careful study of § 81-1106 Ark. Stats. convinces us that this case should be affirmed. This § 81-1106 is the section disqualifying an individual from benefits. The section consists of eight sub-divisions, lettered (a) to (h), inclusive, and we hold that each sub-division is mutually exclusive. In other words, if a person is disqualified from benefits under Sub-division (b) of § 81-1106, he cannot again be disqualified for the same conduct under Sub-division (a) of § 81-1106. In the case at bar, the claimants were disqualified under Sub-division (d) of § 81-1106, which is the section relating to labor disputes: they could not also be again disqualified under Sub-division (a) of § 81-1106 when they offered to return to work. The case of *T. R. Miller Mill Co.* v. *Johns,* 261 Ala. 615, 75 So. 2d 675, is in point. Section A of the Alabama Employment Security Act contained the provision on disqualification in labor disputes and Section B contained the provision as to disqualification of the worker "if he has left his employment voluntarily without good cause connected with such work." The Alabama Court held that one suffering disqualification under Section A was not to be further disqualified under Section B, saying:

"We note that subsection A provides that the disqualification contained therein is to continue so long as the labor dispute is in active progress in the establishment. The conclusion seems necessarily to follow that when the dispute is settled the disqualification ceases. It thus appears that it contains all of the disabilities that the legislature intended to impose because of a labor dispute. Subsection B then appears to be without the influence of the conditions of disqualification set out in subsection A and stipulates for disqualification under other and different conditions. Such seems to be the explicit holding of the Michigan case of *Intertown Corp.*

v. *Appeal Board of Michigan Unemployment Commission,* 328 Mich. 363, 43 N. W. 2d 888, 890.''

When the claimants offered to return to work on November 30th, they removed themselves from the disqualification of Sub-division (d) of § 81-1106 and thereby became involuntarily unemployed and should not be subject to the ten weeks' disqualification under Subdivision (a) of § 81-1106. So the judgment in Circuit Court case No. 41167 is affirmed.

### *Circuit Court Case No. 42261.*

The question in this case is one of procedure: that is, which party had the burden of going forward with the proof on the issue of availability of claimants under the state of the record existing, when the Board of Review sent that issue back to the Appeal Tribunal for further determination. In an effort to clarify the situation presented, we sketch in the numbered paragraphs, I to VIII below, the procedure[3] that was followed in this case in the handling of the unemployment claims:

I. Each worker filed a claim for unemployment benefits according to the procedure set out in § 81-1107 (b). An individual record was made for each claimant.

II. The examiner (in this case Mr. Ritchie, the supervisor of the local office of the Employment Security Division) made a determination of each claim pursuant to § 81-1107(c). The supervisor disqualified each claimant under § 81-1106(a) (for voluntarily quitting work), as previously stated.

III. Each claimant, being dissatisfied with the determination so made by Mr. Ritchie, appealed his claim to the Appeal Tribunal, set up under § 81-1107(d) (1) & (2). Testimony was taken[4] at the hearing before the Appeal Tribunal. A number of witnesses testified, and

---

[3] This procedure is regulated by § 81-1107 Ark. Stats. and the rules of procedure adopted by the Commissioner of Labor pursuant to the authority contained in said section.

[4] Section 81-1107 (d) authorizes the taking of testimony by the Appeal Tribunal.

the hearing covered not only the disqualification under § 81-1106(a), but also the question of each claimant being available for work under § 81-1105. A written opinion was delivered by the Appeal Tribunal. We refer to this hearing in the Appeal Tribunal as the "Fitzsimmons hearing," because it was conducted before the Chief Appeals Referee, Mr. Fitzsimmons. We shall subsequently revert to this Fitzsimmons hearing, as our decision in this Circuit Court Case No. 42261 turns largely on the record made up at that hearing. The result of the Fitzsimmons hearing was (a) to reverse the supervisor's determination as to disqualification of claimants under § 81-1106(a), and also (b) to hold that each claimant was entitled to draw unemployment benefits from November 30th. In other words, eligibility of each claimant was established.

IV. The Company, being dissatisfied with the results so reached by the Appeal Tribunal, appealed all the claims to the Board of Review, as provided by § 81-1107(d) (3). The Board of Review affirmed the holding of the appeal Tribunal. Here is the decision of the Board of Review:

"The decision of the Appeal Tribunal is hereby modified to hold that the Appeal Tribunal had jurisdiction to go into the claimants' availability for work since filing their claims after November 30, 1953, and the question of claimants' availability is remanded back to the Appeal Tribunal for further hearings and decisions. The Board holds further that the Appeal Tribunal was correct in reversing the determinations of the Agency holding claimants disqualified for voluntarily quitting their work on October 14, 1953."

V. The Company then appealed from the Board of Review to the Pulaski Circuit Court (under § 81-1107 (d) (7)) from that part of the opinion of the Board of Review which held that the claimants were not disqualified under § 81-1106(a); and that case became Circuit Court Case No. 41167, as heretofore discussed.

VI. The Board of Review sent back to the Appeal Tribunal (as per the decision previously copied) the matter of making the awards to the individual claimants. When the case went back to the Appeal Tribunal, the Company took the position that the claimants, having had the burden of establishing their claims originally, would have to come in individually and show availability. The Appeal Tribunal insisted that the testimony taken at the previous hearing before it (i. e., the Fitzsimmons hearing) was sufficient to establish *prima facie* the claims of all fifty-five of the claimants as to eligibility, but allowed the Company to call any or all of the claimants for cross-examination. The Company insisted that the burden was on the claimants and not on the Company. Thus there arose the procedure problem, i. e., the burden of going forward. When the Company refused to accept the burden of going forward, the Appeal Tribunal sustained the claim of each of the fifty-five claimants.

VII. The Company appealed to the Board of Review, which affirmed the holding of the Appeal Tribunal.

VIII. The Company then appealed to the Pulaski Circuit Court from the opinion of the Board of Review on this procedural matter; the Circuit Court affirmed the Board of Review in its Case No. 42261; and the case is now before us in this consolidated appeal.

A careful study of the record and of the statutes convinces us that this case should be affirmed. Section 81-1107(d) (4), (5), (6) & (7) contain the law governing these administrative hearings. The Fitzsimmons hearing mentioned in paragraph numbered III heretofore, was based on the entire record in the case, including the Agency records. In the course of the Fitzsimmons hearing, there arose the question of whether each claimant had established his availability for work. Supervisor Ritchie testified that he handled these fifty-five claims; that determinations were made on all of the claims involved on an individual basis; and that there was no

disqualification of any claimant on the issue of availability to work. He testified that the only disqualification was because of voluntarily quitting the work under § 81-1106(a). The record shows that the card of each individual claimant, while not introduced in evidence, was tendered to the Company's attorney at the time of the hearing and that the Company actually called several claimants (Agnew, Handley, and Barnes) to cross-examine them on the question of availability. If the Company had wanted to call all the other claimants it could have done so at that time. The determination by Superintendent Ritchie[5] that each of these claimants was available for work beginning November 30th made a *prima facie* case and the burden of going forward to disprove that case was on the Company. When the Board of Review sent the case back to the Appeal Tribunal it was not necessary to retake the evidence. The entire record of the Fitzsimmons hearing was before the appeal tribunal on remand, and the burden was on the Company to go forward to overcome the *prima facie* case made by the determination of Supervisor Ritchie. We think the better reasoned cases support the following statement contained in the written opinion of the Board of Review in this case:

"It has been held that a claimant, an unemployed worker in a covered employment, is presumed to be available for work when he registers for work and files a claim for benefits, but such presumption is rebuttable. *Mattey* v. *Unemployment Comp. Bd. of Rev.*, 164 Pa. Super. 36, 63 A. 2d 171; *Kelleher* v. *Unemployment Compensation Board of Review*, 175 Pa. Super. 261, 104 A. 2d 423. According to the authorities in the field, 'It is indispensable to proper administration of unemployment insurance laws that the claimant be presumed to be available for work unless cause for doubting that availability appears.' Williams, 8 Vanderbilt Law Review, p. 294,[6] cit-

---

[5] He so testified before the Appeal Tribunal.

[6] This article by Lee G. Williams in 8 Vanderbilt Law Review, p. 286 *et seq.* is entitled, "Eligibility for Benefits," and is most enlightening. It is one of a symposium of articles on unemployment problems, all contained in 8 Vanderbilt Law Review.

ing Altman, Availability for Work, Harvard Univ. Press, 1950, p. 98.''

Accordingly, the judgment of the Circuit Court in Case No. 42261 is also affirmed.