RAINFAIR, INC. *v.* COBB.

5-1529                                                      312 S. W. 2d 906

Opinion delivered May 12, 1958.

*Shaver & Shaver,* for appellant.

*McMath, Leatherman & Woods,* for appellee.

SAM ROBINSON, Associate Justice. This is an appeal from a judgment of the circuit court affirming a decision of the Board of Review holding that certain former employees of appellant, Rainfair, Inc., are not disqualified under Ark. Stat. § 81-1106(a), as amended by Act 162 of 1953. This section provides for ten weeks' disqualification if employee voluntarily and without good cause connected with the work left his last work.

Appellant, Rainfair, employs about 107 workers. On the 2nd day of May, 1955, about 25 of the employees did not show up for work. On that same day Mr. James E. Youngdahl, director of organization for the Amalgamated Clothing Workers of America, notified Rainfair

by letter that the employees had gone on strike because of unfair labor practices. The letter from Mr. Youngdahl to Rainfair further states: "We are ready and willing to meet with representatives of your company at any time or place to make arrangements to have our majority status at Wynne, Arkansas, checked against your payroll by some neutral person as previously requested by myself of your officials at Wynne several weeks ago."

The issue between the workers and Rainfair was whether the Amalgamated Clothing Workers Union would be recognized by Rainfair as a bargaining agent for the employees, who were not at the time members of a union. On the same day, May 2nd, Rainfair sent the employees who had not come to work that day the following letter: "We notice that you did not come to work today. We do not know what the cause is for your being absent. You realize that it is necessary for us to have a full complement of employees in order to get our necessary production. Therefore, if you do not return to work by Thursday, May 5, 1955, we will assume that you have resigned and no longer wish to work for us. In that case it will be necessary for us to replace you. We hope that you return to work."

On May 18th the employees abandoned the effort to have the Clothing Workers Union recognized as the bargaining agent and offered to return to work unconditionally. On May 19th they went to Rainfair's place of business to go to work, but were told that no work was available. On June 20, 1955, they again informed Rainfair that they were on a strike. This second notification of being on strike was completely meaningless, because prior to that time they had been discharged.

The appellant, Rainfair, contends that the employees voluntarily quit their jobs and are therefore disqualified to receive unemployment compensation for a period of ten weeks as provided by Ark. Stat. § 81-1106, as amended by Act 162 of 1953.

The appellees contend that they did not voluntarily quit their work on May 2nd, but went out on strike; that

there was a labor dispute. They make no contention that they were entitled to compensation during the time they were on strike, as provided by Ark. Stat. § 81-1106(d). But they do contend that when they called off the strike and offered to return to work on May 18th and were refused work by Rainfair, they immediately became eligible for unemployment compensation.

This case is controlled by *Little Rock Furn. Mfg. Co. v. Commr. of Labor,* 227 Ark. 288, 298 S. W. 2d 56. There the court said: "When the claimants offered to return to work on November 30th, they removed themselves from the disqualification of Sub-division (d) of § 81-1106 . . ."

Appellant attempts to distinguish the case at bar from the Little Rock Furniture Manufacturing Company case on the theory that in the cited case the unemployment grew out of a labor dispute and that in the case at bar it is simply a situation where some employees voluntarily quit their jobs without a just cause. It is clear from the evidence that the employees did not quit their jobs in the usual sense of the word. They simply went out on strike, hoping thereby to prevail on the employer to recognize a union of their choice as their bargaining agent. When it was apparent that their strike would not succeed, they attempted to return to work, but the employer in the meantime had arranged to do without their services and the jobs they left were no longer available to them. This is the same situation as existed in the Little Rock Furniture Manufacturing Company case, and it was held that the employees were not disqualified under Ark. Stat. § 81-1106(a).

Affirmed.

HOLT and WARD, JJ., dissent.

PAUL WARD, Associate Justice, dissenting. I submit that the majority is wrong in holding this case is controlled by the *Little Rock Furniture Mfg. Co.* case [227 Ark. 288, 298 S. W. 2d 56]. Such a conclusion evades the real issue presented in the case under consideration; *i.e.* did appellees leave their employment voluntarily?

A summary of the material facts and issues in the two cases will show the distinction.

*In the Furniture* case it was conceded that there was a labor dispute preceding the strike. The opinion states: "The strike was called by the Labor Union in an effort to obtain certain desired economic benefits." The gist of the holding is this: "the claimants were disqualified under sub-division (d) of Ark. Stats. § 81-1106." That sub-division says "an individual shall be disqualified for benefits . . . for any week with respect to which it is found his unemployment is due to a *stoppage* of work which exists because of a *labor dispute* at the factory . . ." (emphasis supplied). The opinion then proceeds to hold that since the employees were disqualified under (d) they could not also be disqualified under (a) because "each sub-division [in § 81-1106] is mutually exclusive." The opinion did not discuss the facts or circumstances under which an employee might be disqualified for 10 weeks under § 81-1106(a). This sub-section says an employee must wait 10 weeks [after applying for work] before he can draw compensation *"if he voluntarily and without good cause connected with the work"*, leaves his employment.

*The case under consideration* is entirely different. Rainfair's contentions at all times have been: 1. Appellees were disqualified under subsection (a) because, 2. they left their work *voluntarily* and *without good cause* connected with their work.

1.   If the majority opinion is right in holding, based on the *Furniture* case, that appellees cannot be disqualified for 10 weeks under (a) simply because they actually went out on strike, without attempting to show [as it does not] there was "a stoppage of work which existed *because of a labor dispute* at the factory", then the section just quoted has no meaning or significance. The result of the majority opinion would be to hold that any strike, whether it "exists because of a labor dispute" or not, can be successfully relied on to avoid the penalty provided in sub-section (a). That just does not appear to be a reasonable interpretation of the statutes.

2.  If I thought the facts in the case under consideration showed a *bona fide* "labor dispute" I would concur in the majority opinion instead of dissenting, but I do not think so. This vital point was apparently deemed unimportant to the majority because it was not developed. I shall only summarily give my conclusions of what I think the evidence shows.

None of the employees had any complaint about wages, working hours, or working conditions as a basis for striking. Some of them didn't even know why they struck, and didn't know they were going to strike until they were told to do so. The Company's manager didn't know they were going to strike until after it was in effect. The nearest thing approaching a reason for the Union Officers to call the strike was their contention that the Company would not recognize the Union as a bargaining agent. The matter was mentioned about a month before the strike. But, as it appeared at the time and as it was proven later, the Union did not have a majority of the employees, and had no right to be recognized. The management told the Union Officers he would give the recognition when he was furnished with evidence of the required number. This certainly showed the Company's willingness to co-operate. Moreover the Union Officers well knew the law provided a way by which they could determine the extent of their membership— it was also pointed out to them by the manager—but they chose not to pursue that course.

Looking at the situation in its entirety, as it is disclosed by the record, in a common sense and impartial manner, I cannot believe the strike was called in good faith "because of a labor dispute at the factory." I have used the term "good faith" advisedly because I believe it is the only basis on which Labor and Management can successfully and peaceably operate for the mutual benefit of both.