19024

The STATE-RECORD PUBLISHING COMPANY, Respondent, v. The SOUTH CAROLINA EMPLOYMENT SECURITY COMMISSION et al., Appellants.

(173 S. E. (2d) 144)

Robert G. Horine, Esq., of Columbia, for *Appellant, South Carolina Employment Security Commission,*

*Messrs. Robinson, McFadden & Moore,* of Columbia, *for Petitioner-Respondent,*

March 10, 1970.

LITTLEJOHN, Justice.

The South Carolina Employment Security Commission ruled that striking employees were entitled to benefits after the strike was over, and ruled that the benefits should be charged to the employer's employment experience rating reserve. The circuit judge to whom appeal was taken under the provisions of Sections 68-164 and 68-165 of the South Carolina Code, reversed the ruling and held that the employ-

er's experience rating reserve account should not be charged. It is conceded that benefits should be paid, and the only issue for determination by the circuit court and by this court is:

"Does Section 68-115 of the South Carolina Employment Security Law require the South Carolina Employment Security Commission to non-charge the experience rating account of an employer with the amount of benefits paid a former employee to whom the employer has denied reinstatement after termination of a labor dispute?"

The commission has appealed.

There is no dispute as to the facts. On December 15, 1967 William J. Adams and nineteen other typesetter employees of the State-Record Publishing Company, which publishes daily newspapers, commenced an economic strike. No unfair labor practices were involved and the only issue between the employer and the employee was wages and benefits. It has been agreed that the case of Mr. Adams will be determinative of all cases. Actually, the employees are not parties to this appeal and the contest is between the commission and the employer.

During the course of the labor dispute, which extended for a year, lacking ten days, the employer replaced the strikers with other workers and continued to publish the daily papers. When the strike was abandoned by the union the employee sought reinstatement of his job but was informed that the position had been permanently filled. During the strike the employee was not entitled to benefits under the law because Section 68-114 states that persons on strike shall be ineligible for benefits during a labor dispute. The strike having ended and no job being available, the employee filed claim for unemployment compensation under the provisions of the South Carolina Unemployment Compensation Law, Section 68-1 and subsequent sections. The position of counsel for the employer throughout the case, as stated into the record is as follows:

"Our position is not that these ladies and gentlemen are not entitled to any employment compensation. It is our position that they are not entitled to any employment compensation at the expense of the company's account under Section 68-115 of the 1962 Code on the grounds that they have created the lack of work situation by voluntarily abandoning their jobs * * *. This is our position, so it's not that we are involved in whether or not they're entitled. We say they are not entitled at our expense because they have voluntarily created the lack of work situation."

The circuit judge ruled that the employer's experience rating account is exempt from charge in the circumstances set out herein because claimants voluntarily left their jobs without good cause within the contemplation of Section 68-115 of the code. He ordered that benefits being paid to the employee be not charged against the experience rating account of his former employer.

As indicated above, this appeal does not involve whether the employee should draw unemployment compensation nor does it involve the amount to which he is entitled. In protecting employees against unemployment, the statute places a general burden on industry as a whole. The fund from which benefits are paid is a common fund; however, separate accounts are kept for each employer and the rate of contribution (somewhat equivalent to an insurance premium) is raised or lowered periodically, based on the individual employer's experience. See Section 68-174. Counsel for the commission, in written brief, asserts that "well over one-third of all benefits are not charged to experience rating accounts." These are paid from the general fund, at the expense of all employers, to persons who have served disqualifications after leaving employment by reason of such things as voluntarily quitting, being discharged for misconduct, or being paid though refusing to work. Obviously, if benefits are paid the twenty employees involved in this case, the contribution rate will be adversely affected, though it is impossible to estimate to what extent.

Section 68-115 of the code sets forth certain exceptions under which benefits paid to a claimant shall not be charged against the account of any employer. The employer contends that benefits should be paid from the general fund and not charged against it because of the exemptions in this section. We are called upon to construe that section. The commission and the circuit judge have differed as to its meaning. It reads in part as follows:

"Benefits paid to any claimant shall not be charged against the account of any employer when the Commission finds that such individual (a) voluntarily left his most recent employment with the employer without good cause, * * * or (c) subsequent to his most recent employment refused without good cause to accept an offer of suitable work made by that employer * * *."

There are no disputed facts, and accordingly the issue is one of law. *Judson Mills v. South Carolina Unemployment Compensation Commission,* 204 S. C. 37, 28 S. E. (2d) 535 (1943).

In oral argument counsel for the commission candidly admitted that the employee voluntarily left his employment when he stated:

"We concede that these people voluntarily went on strike. All strikers voluntarily go on strike."

When the employee applied for compensation he was in the status of an unemployed person. A construction of Section 68-115 is never necessary until benefits are actually paid, as has been done here. When employment terminates might be extremely important on the issue of whether an employee is entitled to benefits, but has little relevancy here, where the only issue is: should the benefits be non-charged? We need not construe Section 68-114.

The legislature has determined that no benefits shall be paid when a labor dispute exists. The merits of the strike and the cause are not relevant on the issue of "good cause."

The rule was stated in In re Steelman, 219 N. C. 306, 13 S. E. (2d) 544: "* * * the merits of the labor dispute cannot belong to the commission. These are matters more properly pertaining to the field of labor relations."

Also see *Ablondi v. Board of Review,* 8 N. J. Super. 71, 73 A. (2d) 262.

■ Both the employer and employee apparently asserted and pursued rights available to them under the law. "Without good cause" referred to in Section 68-115 does not contemplate fault in the sense of blame.

■ When a statute is subject to more than one interpretation legislative intent is controlling. We held in *Stone Mfg. Co. v. South Carolina Employment Security Commission,* 219 S. C. 239, 64 S. E. (2d) 644 (1951):

"The dominant intent of the statute under consideration can best be ascertained from Section 7035-82 (now Section 68-38) of the 1942 Code, which is as follows: 'Without intending that this section shall supersede, alter, or modify the specific provisions hereinafter contained in this article but as a guide to the interpretation and application of this article, the public policy of this State is declared to be as follows: "economic insecurity due to unemployment is a serious menace to health, morals and welfare of the people of this State. Unvoluntary (sic) unemployment is therefore a subject of general interest and concern which requires appropriate action by the General Assembly to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and his family. The achievement of social security requires protection against this greatest hazard of our economic life. This can be provided by encouraging the employers to provide more stable employment and by the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor relief assistance. The General

Assembly, therefore, declares that in its considered judgment the public good, and the general welfare of the citizens of this State require the enactment of this measure, under the police powers of the State, for the·compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own." ' "

Our judicial function is confined to the interpretation and application of the comprehensive legislative phraseology in the light of its history, purpose and context. The basic question is : did the legislature intend to non-charge the specific employer and spread the burden of paying the benefits among all contributors to the common fund, including the employer here as respondent? One cannot conclude that this employer is responsible for unemployment without going into the merits of the strike, which we refuse to do.

When the strike began the employer was placed in a dilemma. It could (1) stop operating and publishing the newspapers, in which case some 300 nonstriking workers would have been unemployed and would apparently have been entitled to draw unemployment compensation; or (2) it could have replaced the twenty typesetters and continued to employ the 300 regular workers plus the twenty new employees. It chose the latter course.

When the strike was over the employer found itself in a second dilemma. It could (1) continue to employ the twenty replacements or (2) it could discharge the replacements and place the striking employees back on the job. It chose the former.

Counsel for the commission in oral argument concedes "this employer should not be charged with these benefits, but there is no way under the present law we can non-charge it." We cannot agree that the construction for which the commission contends is compelling and we rather conclude that the legislature never intended to penalize an employer under the circumstances here involved.

This court has heretofore, on more than one occasion, construed the phrase "without good cause" as meaning without good cause connected with employment. *Stone, supra,* and *Hartsville Cotton Mill v. S. C. Employment Security Commission,* 224 S. C. 407, 79 S. E. (2d) 381 (1953). "Without good cause" is used in both the ineligibility statute and in the non-charge statute.

We hold that Sections 68-114 and 68-115 are mutually exclusive. See *Little Rock Furniture Mfg. Co. v. Commissioner of Labor,* 227 Ark. 288, 298 S. W. (2d) 56 (1957). The circuit court order and this opinion are confined to an interpretation of Section 68-115.

Let the order of the circuit judge be

Affirmed.

Moss, C. J., and LEWIS, J., concur.

BUSSEY and BRAILSFORD, JJ., dissent in part.

BRAILSFORD, Justice (dissenting in part) :

I respectfully dissent. The issue turns on whether by joining in a strike lawfully called by his union the employee voluntarily left his work without good cause within the meaning of the South Carolina Unemployment Compensation Act, specifically Section 68-115, Code of 1962. I would hold that he did not. The noncharge provision relied upon is applicable only where an employee voluntarily leaves his work *and* is without good cause in so doing. In my judgment, neither of these conditions is met by merely showing that the employee left work in the exercise of his right to join in a lawful strike called by his union. The commission correctly charged the benefits to the employer's account because the Act so provides, not because of any fault of the employer. Sec. 68-172, Code of 1962.

BUSSEY, J., concurs.