CITY OF FORT SMITH *v.* John
MOORE et al, and Charles L. DANIELS,
Director of Labor, State of Arkansas

CA 79-70                    599 S.W. 2d 750

Court of Appeals of Arkansas
Opinion delivered May 14, 1980
Released for publication June 4, 1980

*Bethell, Calloway & Robertson*, by: *Edgar E. Bethell*, for appellant.

*Youngahl, Harrison & Agee*, for appellees John Moore, et al.

*Thelma M. Lorenzo*, for appellee Charles Daniels.

GEORGE HOWARD, JR., Judge. The pivotal issue is whether the finding of the Board of Review that the labor dispute between appellant, City of Fort Smith, and appellees, former non-uniform employees of the City, terminated on May 10, 1978, and, consequently, appellees are eligible for unemployment benefits, although the issues that precipitated the dispute were being arbitrated pursuant to the collective bargaining agreement between the parties.

The relevant facts are: On April 12, 1978, appellees reported for work, as usual, but just prior to the time that they were expected to commence their daily routine, several employees of the Street Department requested their Union Steward, Jake Sharum, to advise the City Administrator, Hugh Earnest, that they wanted to meet in conference in order to discuss working conditions. Mr. Earnest declined to meet with the Street Department employees, but stated that he would meet, when it was mutually convenient, with a committee of the group to discuss any problems they desired to register. Mr. Earnest, in addition, advised the employees' representative that, in the meantime, the employees should return to work.

After hearing Mr. Sharum's report, the employees left their employment and went to the Union Hall. At this point, appellees' version of what took place differs from appellant's version. Appellant states that appellees were told to either go

to work or leave the premises, while appellees contend that a foreman of the Street Department told the employees to "Hit the gate. You are fired." It is plain, however, the Street Department employees did not return to work and as word of the dispute spread, other employees in various departments followed the Street Department employees to the Union Hall.

On the evening of April 12, 1978, a meeting was held, consisting of the City Administrator and a committee of the employees. While receiving numerous complaints registered by the committee and advising the committee that some of the complaints would be corrected and others would not, the City Administrator urged the employees to return to work.

On April 13, 1978, the employees picketed several installations, including City Hall.

On April 18, 1978, appellant began to hire replacements for those employees who ignored appellant's warning to return to work by April 17th. As a consequence, the City was functioning on a "substantially normal basis."[1]

Appellees claim that while some workers returned to their jobs on April 17th, as directed, appellees refused to do so unless four other employees who had received termination notices were reinstated.

On May 3rd, appellant made an offer to appellees stating that it would accept applications from those employees who were terminated on April 17th, and would consider them for vacancies as such vacancies occur. The offer contained a condition that those employees who were rehired must serve a forty-five (45) day probationary period after which their previous seniority rights would be restored.

On May 10th, appellees submitted individual appli-

---

[1]On April 28, 1978, at the request of appellant, the Chancery Court of Sebastian County issued an injunction enjoining all picketing at appellant's installations. The Chancery Court's decree further enjoined the parties to "diligently pursue the administrative remedies available to each of them, specifically including the grievance and arbitration provisions of the parties working agreement."

cations for rehire and attached a statement containing the following:

> "I will not, of course, give up any contract rights negotiated for me by my union. . . . I demand that the City stop trying to cancel its legal contract provision without even pretending to go through proper procedures."

On May 11th, appellant rejected appellees' applications.

Appellees filed claims for unemployment benefits under Arkansas' Employment Security Law, but the Local Agency held appellees ineligible for benefits because their employment was lost by reason of a labor dispute.

The Appeal Tribunal affirmed the Agency's decision that appellees were ineligible for benefits from April 12, 1978, to May 13, 1978, inclusive, but found appellees eligible commencing May 14, 1978, concluding:

> "The Tribunal . . . finds that the dispute ended as of May 10, 1978, when claimants applied . . . to be rehired. By this time, city operations had returned to normal and the claimants had been permanently replaced in their jobs."

On January 20, 1979, the Board of Review affirmed the action of the Appeal Tribunal.

For reversal, appellant has asserted the following points:

1. The Board of Review erred in finding that the labor dispute had ended, and that the claimants were eligible for unemployment benefits.

2. The Board of Review erred in failing to find that the claimants were disqualified for benefits until they had at least thirty (30) days paid work after filing their respective claims.

3. The Board of Review erred in failing to find that the

claimants were disqualified for eight (8) weeks of un-employment compensation because they were discharg-ed for misconduct in connection with their work.

I.

Ark. Stat. Ann. § 81-1105(f) provides in relevant part:

If so found by the Commission, no individual may serve a waiting period or be paid benefits for the duration of any period of unemployment if he lost his employment or has left his employment by reason of a *labor dispute* other than a lockout at the factory, establishment, or other premises at which he was employed (regardless of whether or not such labor dispute causes any reduction or cessation of operations at such factory, establishment or other premises of the employer), as long as such labor dispute continues, and thereafter for such reasonable period of time (if any) as may be necessary for such fac-tory, establishment, or other premises to resume normal operation. (Emphasis added)

Appellant argues that the language in § 81-1105(f) clear-ly precludes the payment of benefits for the duration of any period of unemployment if the claimant "lost his employment or has left his employment by reason of a labor dispute . . . as long as such labor dispute continues . . ."; that the labor dis-pute in the instant case did not terminate, as found by the Board of Review on May 10, 1978, but, on the contrary, the labor dispute ended March 9, 1979, when the arbitrator denied the claims of appellees for reinstatement to their former employment.

Appellant seeks to equate "labor dispute" with the cessation of work on the part of an employee, in which case, "labor dispute" would be synonymous with "unemployment"; and thus, an additional period of in-eligibility could commence at the end of a strike. But this Court has made it clear, while there has been no attempt to render a definition of "labor dispute", that when the employees cease all strike activity and apply unconditionally for reinstatement and the employer has resumed normal

operations, the labor dispute is regarded as terminated and claimants may not be disqualified under the "labor dispute" provision. *Burkhart/Randall Div.* v. *Daniels*, 266 Ark. 234 (Ark. App. 1979), aff'd *Randall, Burkhart/Randall Div. of Textile, Inc.* v. *Daniels, Director*, 268 Ark. 375, 597 S.W. 2d 71 (1980).

Moreover, the purpose of the *Employment Security Law* is to relieve some of the economic consequences of involuntary unemployment, and not to penalize or reward either the employee or employer engaged in a legitimate labor dispute. The Act was not intended to compel a striking employee to remain without benefits longer than his own action made it necessary. The Law's only concern with labor disputes is for the determination, when a claim is filed for benefits, whether claimant's unemployment is voluntary or involuntary. This Court in *Burkhart*, supra, in recognizing this limited concern said:

"We believe all of the facts and circumstances of each case must be considered in determining whether a 'labor dispute' exists or is terminated within the meaning of the act. We hold that the collective and unconditional offer by the striking employees to return to work terminated the 'labor dispute' within the meaning of Ark. Stat. Ann. § 81-1105(f)."

However, appellant argues that appellees' applications of May 10, 1978, for rehire did not comply with appellant's offer according to "the stated terms." In other words, while appellees' applications accepted the offer to return to work, the applications rejected the loss of seniority or contractual rights. Thus, argues appellant, appellees' offer is conditional and, consequently, appellees are ineligible for benefits. Appellant cites *Rainfiar, Inc.* v. *Cobb*, 229 Ark. 37, 312 S.W. 2d 906 (1958) where the Arkansas Supreme Court held that employees, who had called off a strike and offered to return to work unconditionally, were immediately eligible for benefits although the employer had no available work.

We are not persuaded that appellees' applications must be regarded as conditional offers for rehire. Appellant's offer

to rehire appellees was conditioned upon the forfeiture of seniority rights secured under the collective bargaining process. It is plain appellant's offer of May 3rd was not really an offer affording appellees any meaningful benefits. It was an offer that in many respects had the appearance of according appellees a "Hobson's choice." Indeed, if appellees accepted the offer as, submitted by appellant, they would forfeit contractual rights acquired as a result of years of faithful service, while on the other hand, if they rejected the offer, this action would preclude the recovery of unemployment benefits. We hold that the rights of an employee secured under the collective bargaining process and his eligibility for benefits — which is part and parcel of a social program sponsored by the State to protect one against the hazards of economic life — may not be frustrated by an offer affording no real alternatives.

## II.

Appellant contends that the Board of Review erred in failing to find appellees were disqualified for benefits under Ark. Stat. Ann. § 81-1106(a) and (b) which provide:

> ... an individual shall be disqualified for benefits:

> (a) If he voluntarily and without good cause connected with the work, left his last work. Such disqualification shall continue until, subsequent to filing his claim, he has had at least 30 days of paid work.

> ...

> (b) (1) If he is discharged from his work for misconduct in connection with the work. Such disqualification shall be for eight [8] weeks of unemployment ...

Appellees contend, however, appellant is precluded from raising these issues at the appellate level since they were not asserted below.[2]

---

[2]Appellant's petition for review before the Board of Review states:

Appellant concedes that its disqualification argument under § 81-1106(b) was not raised until the case reached this Court; but argues the issue, nevertheless, was present throughout the length of the proceedings below; that appellees' claims were specifically challenged under § 81-1106 in its position statement filed with the Appeals Referee on July 18, 1978, and that while "the position statement is not part of the record in this case, it can be obtained by this Court from the files of the Employment Security Division if there is any dispute that this issue was raised before the Referee."[3]

The Appeals Referee made the following findings:

The Tribunal finds from a study of the record that the claimants left their employment by reason of a labor dispute. . . . The Tribunal further finds that the dispute ended as of May 10, 1978, when the claimants applied to the City to be rehired. By this time city operations had returned to normal and the claimants had been per-

---

"The appellant appeals from the decision of the Appeals Referee, and petitions the Board of Review to review all of the records and the testimony and render its decision thereon."

While appellant's memorandum brief to the Board of Review makes reference to § 81-1106 (a), we are persuaded that the only issue submitted to the Board of Review involved § 81-1105 (f) regarding a claim of benefits during a labor dispute.

While a copy of the arbitration proceeding was made a part of the record, it is readily apparent that neither the Appeals Referee nor the Board of Review dealt with the merits of the labor dispute. It seems clear that in order to deal with the question whether appellees voluntarily left their employment without cause necessarily involves the merits of the dispute, a task which courts are unwilling to assume where, as here, it is a labor-management controversy. *Lawrence Baking Co.* v. *Michigan Unemployment Compensation Commission*, 13 N.W. 2d 602.

[3] Appellant recognizes that *Little Rock Furniture Mfg. Co.* v. *Commissioner of Labor*, 227 Ark. 288, 298 S.W. 2d 56 (1957) holds that if a claimant is disqualified under one subsection, he may not be disqualified for the same conduct under another subsection, but argues that the term "same conduct" affords a basis for recognizing that one may be disqualified under more than one subsection, "if the second disqualification is based on different conduct or circumstances." We deem it sufficient to state that appellant's argument is not persuasive given the circumstances surrounding the instant case.

manently replaced in their jobs . . .[4]

. . . The determination of the Agency holding the claimants ineligible for benefits under the provisions of Section 4 (f) of the Arkansas Employment Security Act is affirmed . . .

The Board of Review made the following findings and conclusions of law:

The claimants appealed to the full Board of Review from that part of the decision of the Appeal Tribunal which affirmed Agency determinations denying claimants benefits under the provisions of Section 4 (f) of the Arkansas Employment Security Law beginning April 12, 1978 and through May 13, 1978.

The employer appealed to the full Board of Review from that part of the decision of the Appeal Tribunal which held that beginning May 14, 1978, the claimants were eligible for benefits under this section of the Law.

. . .

After a consideration of the evidence, the full Board of Review is of the opinion that the decision of the Appeal Tribunal in this case . . . is correct. . . . That decision is hereby adopted as the decision of the full Board of Review.

The claimants are ineligible for unemployment benefits under the provisions of Section 4 (f) of the Arkansas Employment Security Law beginning April 12, 1978, and through May 13, 1978. Beginning May 14, 1978, the claimants are eligible for unemployment benefits under this section of the Law.

---

[4]It is settled that a strike does not terminate the employer-employee relationship. The refusal of an employer to permit striking employees to return to their employment creates, as here, the unemployed status. *National Labor Relations Board* v. *Mackay Radio & Telegraph Co.*, 304 U.S. 333 (1938); *Ayers* v. *E. F. Johnson Co.*, 70 N.W. 2d 296 (1955).

It is settled law that an appellate court will not consider questions raised for the first time on appeal. Issues are resolved upon a record that is properly constructed at the trial level; and the appellant has the duty, unless the appellee deems the transcript deficient, to tender a record containing all of the evidence relevant to his case. *Hughes* v. *State*, 264 Ark. 723, 574 S.W. 2d 888 (1978); *Palmer, et al* v. *Cline*, 254 Ark. 393, 494 S.W. 2d 112 (1973); Rules 5 and 6 of Rules of Appellate Procedure.

We hold that the decision of the Board of Review is supported by substantial evidence and, accordingly, we affirm.