WYOMING DEPARTMENT OF EM-
PLOYMENT, UNEMPLOYMENT IN-
SURANCE COMMISSION, Appellant
(Respondent),

v.

Craig PORTER, Appellee (Petitioner).

No. 98–257.

Supreme Court of Wyoming.

July 14, 1999.

Gay Woodhouse, Attorney General; and
Joe Scott, Senior Assistant Attorney General.
Argument by Mr. Scott, for Representing
Appellant.

Michael D. Newman of Honaker, Hampton
& Newman, Rock Springs, WY. Argument by
Mr. Newman, for Representing Appellee.

Before LEHMAN, C.J., and THOMAS,
MACY, GOLDEN, and HILL, JJ.

HILL, Justice.

The Wyoming Department of Employ-
ment, Unemployment Insurance Commission
(Commission), appeals from the decision of
the district court reversing the determination
of the Commission that Appellee Craig Port-
er (Porter) was liable for the repayment of
unemployment insurance benefits based on
this Court's decision in *General Chemical
Corporation v. Unemployment Insurance
Commission*, 906 P.2d 380 (Wyo.1995).

We affirm the decision of the district court.

## ISSUES

The Commission sets forth a single issue
for review:

> Whether Unemployment Insurance Com-
> mission Decision No. C–6501–98, which
> held Craig Porter was liable to repay un-
> employment benefits is supported by sub-
> stantial evidence and is in conformity with
> law?

Porter's statement of the issue substantially
agrees with that set forth by the Commis-
sion:

> Was the Unemployment Insurance Com-
> mission's decision affirming the Appeals
> Examiner's holding that the Claimant had
> been overpaid unemployment insurance
> benefits in accordance with law?

## FACTS

In 1993, Porter was part of a group of employees of General Chemical Corporation who went on strike. Porter was terminated from his employment for alleged picket line misconduct. Porter and other striking employees filed claims for unemployment benefits, and General Chemical challenged the claims for benefits filed by the striking workers. An initial determination was made by a deputy of the Department of Employment, Employment Resources Division (Division), that Porter was eligible for unemployment benefits. In an apparent effort to simplify matters, General Chemical entered into an agreement with the striking workers whereby they agreed to consolidate their claims into a "test case" based upon the conclusion that "common questions of law and fact [will] determine" the claimant's rights to benefits (hereinafter the Agreement). Despite having been terminated from his employment, Porter signed the Agreement, along with other strikers.

General Chemical appealed the test case, and an Appeals Examiner overturned the deputy's decision and found that the claimants were not entitled to benefits because they were members of a labor organization engaged in a work stoppage, and such activity disqualifies an individual from benefits under Wyo. Stat. Ann. § 27–3–313(a)(i) (LEXIS 1999). The Appeals Examiner also specifically found that Porter had not engaged in any misconduct on the picket line. The decision of the Appeals Examiner was appealed to the Commission. Reversing the decision, the Commission concluded that "work stoppage" referred to the employer's business operations and not the individual worker's decision to withhold his labor. The Commission did affirm the Appeals Examiner's determination that Porter had not engaged in misconduct.[1]

General Chemical appealed that portion of the Commission's decision relating to the eli-

gibility of the claimants under the "work stoppage" provision of Wyo. Stat. Ann. § 27–3–313(a)(i) to the district court, which certified the matter to this Court. In *General Chemical Corporation v. Unemployment Insurance Commission*, 906 P.2d 380 (Wyo. 1995), we reversed the Commission on the basis that the plain language of the statute indicated that "work stoppage" referred to an individual's voluntary decision to withhold his labor, and, consequently, the striking workers were disqualified under Wyo. Stat. Ann. § 27–3–313(a)(i) from receiving unemployment insurance benefits. *General Chemical Corporation*, 906 P.2d at 381–82.

In response to the *General Chemical* decision, the Division sent Porter a notice on March 12, 1996, that he had been paid unemployment benefits for which he was not qualified. The Division requested repayment of $2,420.00 for the weeks ending September 18 through November 27, 1993. The Division did not request repayment for any benefits Porter received after November 27—which was when the strike ended—because his employment had been terminated.

On March 25, 1996, Porter protested the notice of overpayment, and, in response, the Division sent Porter an application for waiving the overpaid benefits. When Porter had not responded over a year later, the Division sent another letter requesting payment of the $2,420.00 in full. Porter, unable to repay that amount in a lump sum, agreed to pay in installments and, on April 21, 1997, signed an agreement to that effect.[2] When Porter failed to make the first payment, as agreed, the Division again sent a letter asking for repayment. At this point, Porter filed a protest to the notice of overpayment, contesting the validity of his disqualification and asking for a waiver. The Division denied the waiver request on the basis that he did not meet the criteria for a wavier pursuant to the provisions of Wyo. Stat. Ann. § 27–3–409(b)

---

1. That determination is not disputed by the Commission.

2. The Commission has not argued on appeal that this particular agreement by Porter waived any of his rights to contest the propriety of the notice of overpayment, so we will not consider what, if

any, effect it has on this proceeding. However, we do note that the validity of any waiver alleged to have occurred by virtue of Porter's actions here is questionable in light of our discussion below of Wyo. Stat. Ann. § 27–3–319(a).

and Chapter 32 of its rules and regulations. Porter subsequently protested this decision.

The matter was referred to an Appeals Examiner for hearing after which Porter's protest was denied on the grounds that he did not meet the criteria for a waiver[3] and that he was disqualified from benefits based on this Court's decision in *General Chemical.* That decision was affirmed by the Commission, and Porter appealed to the district court.

Reversing, the district court acknowledged that an employee who is on strike is disqualified from benefits under the holding of the *General Chemical* decision. However, it concluded that those workers who are fired while on strike are not disqualified so long as the discharge is not related to misconduct connected with their employment because their termination deprived them of the choice to strike or to work. Therefore, Porter was entitled to unemployment benefits. The Commission has now appealed that decision to this Court.

### STANDARD OF REVIEW

■ Review of the Commission's decision proceeds as if the matter had come directly to us, and we afford no special deference to the district court's determinations. *Wyoming Department of Employment, Division of Unemployment Insurance v. Banks,* 854 P.2d 709, 711 (Wyo.1993). The Wyoming Administrative Procedure Act defines and limits our authority in review of administrative decision-making:

> (c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
>
> (i) Compel agency action unlawfully withheld or unreasonably delayed; and

> (ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
>
> (A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
>
> (B) Contrary to constitutional right, power, privilege or immunity;
>
> (C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;
>
> (D) Without observance of procedure required by law; or
>
> (E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

Wyo. Stat. § 16–3–114(c) (1990).

*Gibson v. Wyoming Division of Unemployment Insurance,* 907 P.2d 1306, 1309 (Wyo. 1995). "We will affirm an agency's legal conclusion only if it is in accordance with the law." *Haynes v. State ex rel. Wyoming Workers' Compensation Division,* 962 P.2d 876, 878 (Wyo.1998).

### DISCUSSION

■ Initially, we consider the Commission's contention that the Agreement, signed by Porter as part of the proceedings leading up to our decision in *General Chemical,* bound him to our holding that striking workers are disqualified from benefits. The Commission notes that the Agreement stated that the signers, including Porter, "agree that common questions of law and fact determine the below listed claimant's right to benefits" and that the claims "will be adjudicated, and that decision will be binding on the rest of us." In effect, the Commission is arguing that, by signing the Agreement, Porter has waived his right to challenge his disqualification for benefits upon any basis arising out of the events which gave rise to his initial claim (*i.e.,* the strike).

Unfortunately, neither party addressed the impact of Wyo. Stat. Ann. § 27–3–319(a) on the Agreement. That provision provides:

---

**3.** Porter has not challenged this determination on appeal.

(a) Except as provided by W.S. 27–3–305, 27–3–320 and 27–3–321, *any agreement to waive, release or commute benefit rights or any other rights under this act is void* and any agreement by any employed individual to pay any portion of an employer's contribution required by this act is void.

Wyo. Stat. Ann. § 27–3–319(a) (LEXIS 1999) (emphasis added). The plain, unambiguous language of the statutory provision makes it clear that a claimant cannot agree to waive, release, or commute benefit rights or any other rights under this Act.[4] Any agreement which purports to do so is void. Therefore, regardless of what the intent of the parties to the Agreement was, it is void insofar as the Commission attempts to characterize it as a waiver by Porter to any of his rights under the Act. This is not to say that Porter is not bound by this Court's decision in *General Chemical.* Even if the Agreement is void, Porter would still not be eligible for benefits as a striking worker simply because striking workers do not have any right to benefits under the Act, and our decision in *General Chemical* is dispositive of that issue for all claimants under the doctrine of *stare decisis.*

█ The validity of our decision in *General Chemical,* however, is not the issue confronted by us today. The question we must decide is whether a striking worker who is disqualified for benefits while a work stoppage is ongoing becomes eligible for benefits upon his termination from employment, absent work-related misconduct.

The Commission's position is that once a claimant has been disqualified, they cannot be eligible for benefits until the initial condition which created the disqualification has been removed. In other words, the Commission argues that since Porter's initial unemployment was due to a disqualifying work stoppage, he cannot qualify for benefits regardless of any change in circumstances until that work stoppage has been resolved. We must reject the Commission's position because it not only ignores reality but is incon-sistent with the statutory language and purpose underlying unemployment insurance.

We begin with the language of the statutory provision which disqualifies a claimant if his unemployment is due to a work stoppage:

(a) *For any week* with respect to which the following situations occur or payments have been or will be received, an individual shall be disqualified from benefit entitlement if:

(i) Total or part total unemployment *for any week* is due to work stoppage resulting from a labor dispute on the employment premises at which he was last employed.

Wyo. Stat. Ann. § 27–3–313(a)(i) (LEXIS 1999) (emphasis added). Our decision in *General Chemical Corporation* made it clear that the decisive factor in disqualifying a claimant under this provision was the claimant's voluntary decision to withhold his labor. *General Chemical Corporation,* 906 P.2d at 382. Hence, under the plain language of the statute, *"for any week"* where a claimant has voluntarily withheld his labor due to a work stoppage resulting from a labor dispute, he is disqualified from benefits. The use of the language *"for any week"* clearly contemplates that a claimant's eligibility status for benefits could vary from week to week. This proposition is supported by the general structure of the Wyoming Employment Security Law. Wyo. Stat. Ann. §§ 27–3–101—704 (LEXIS 1999). For example, the term "unemployment" is defined as "any *week* in which an individual performs no services and receives no wages or performs less than full-time work if wages payable for that week are less than his weekly benefit amount and are in accordance with regulations of the commission". Wyo. Stat. Ann. § 27–3–102(a)(xv)(LEXIS 1999); *see also* Wyo. Stat. Ann. §§ 27–3–303 (benefits paid and calculated on a weekly basis); 27–3–306 (eligibility requirements); 27–3–307 (eligibility when enrolled in approved training programs); 27–3–314 (extended benefit periods); 27–3–315 (when individual is deemed an exhaustee); 27–3–316 (applicability of regular claim and

---

4. The three exceptions noted above, Wyo. Stat. Ann. §§ 27–3–305 (child support obligations), 27–3–320 (federal income tax withholding), and 27–3–321 (food stamp over issuance) are not applicable under the facts of this proceeding.

payment provisions to extended benefits); and 27–3–317 (eligibility for extended benefits).

In this case, Porter was initially disqualified because he was voluntarily withholding his labor due to a work stoppage. That is undisputed. What is also undisputed is that Porter was terminated from his employment during the course of the strike. That action effected a fundamental change in the nature of Porter's relationship with his employer. At that moment, Porter was no longer voluntarily withholding his labor since he was no longer an employee. The basis of our holding in *General Chemical* was the *voluntary* nature of a striker's decision to withhold his labor. That condition evaporated upon Porter's termination, and, consequently, for the purposes of benefits under the Act, Porter's unemployment for each succeeding week of the strike was not due to a voluntary withholding of his labor pursuant to a work stoppage, it was due to the termination of his employment relationship with his employer. Thus, absent any other disqualifying conditions, Porter was eligible for unemployment benefits under the plain and unambiguous language of the Wyoming Employment Security Law.

The courts of other states have also concluded that the termination of an employee during the course of a labor dispute entitles the claimant to unemployment compensation benefits. *See Federico v. Brannan Sand & Gravel Company*, 788 P.2d 1268, 1273 (Colo. En Banc 1990) ("We conclude that an employee involved in a labor dispute is entitled to unemployment compensation benefits when the employer-employee relation has been terminated with respect to that employee."); *Christianson v. Geo. A. Hormel & Company*, 404 N.W.2d 334, 337–38 (Minn. App.1987) (claimant was entitled to unemployment benefits because his actions resulting in his termination during the course of a strike did not constitute misconduct).

The precedent cited by the Commission addresses the issue of eligibility in the context of an employer's replacement of striking workers and whether such an action constitutes a termination of the striking employer's relationship with his employer. In those cases, the courts have analyzed whether, under the particular facts of the situation, the hiring of replacement workers has acted as a *de facto* termination of the claimant's employment. If no *de facto* termination has occurred, then the claimant is not entitled to benefits but conversely, if so, then he is entitled to the benefits. *See Federico*, 788 P.2d at 1273; *Baugh v. United Telephone Company*, 54 Ohio St.2d 419, 377 N.E.2d 766 (1978) (hiring of replacement workers severed the labor dispute as the proximate cause of unemployment, and the statutory disqualification was no longer applicable); *Building Products Company v. Arizona Department of Economic Security*, 124 Ariz. 437, 604 P.2d 1148 (App.1979)(claimants who continued strike despite the hiring of replacement workers were still disqualified from receiving benefits); *See also Williams v. Teledyne Continental Motors Aircraft Products*, 646 So.2d 22 (Ala.1994)(claimants ineligible); and *City of Fort Smith v. Moore*, 269 Ark. 617, 599 S.W.2d 750 (App.1980)(claimants eligible).

The underlying theme of all of the above-cited cases is that the key consideration is whether the employer-employee relationship has been terminated. If so, then a claimant who was initially disqualified because of a labor dispute becomes eligible for benefits. In this case, there is no dispute that Porter's relationship with his employer was terminated and, therefore, he was eligible for benefits.

## CONCLUSION

A claimant who is initially disqualified for unemployment benefits on the basis that his unemployment is due to a work stoppage may become eligible for benefits, despite the continuation of the work stoppage, if it can be demonstrated that his relationship with his employer has been terminated. Porter has made that demonstration, and he is entitled to retain the benefits paid to him during the course of the strike. The decision of the district court reversing the Commission's determination of overpayment is hereby affirmed.