RANDALL, BURKART/RANDALL DIVISION
of TEXTRON, INC. *v.* Charles L. DANIELS,
Director, Arkansas Department of Labor;
Henry L. McHENRY, Administrator
Division et al

79-302                                           597 S.W. 2d 71
Supreme Court of Arkansas
Opinion delivered April 14, 1980

376

*Oscar Fendler* and *Dinsmore, Shohl, Coates & Deupree,* by: *Michael W. Hawkins,* Cincinnati, Ohio, for petitioner.

*Youngdahl, Larrison & Agee,* for respondents.

RICHARD L. MAYS, Justice. This case arises from a special examiner's award of unemployment compensation to claimants whom the petitioner contends are ineligible because of the "labor dispute" disqualification provision of the Arkansas Employment Security Act (Ark. Sat. Ann. § 81-1101, et seq. [Repl. 1976]). On appeal the award has been sustained by the Board of Review, the circuit court and the Court of Appeals. The case is here on a petition for certiorari, which we granted.

Petitioner, the Randall Company, is a manufacturing concern with a plant in Blytheville, Arkansas which employs more than 350 employees who are represented for collective bargaining purposes by the United Automobile Workers, Local 1249, In July of 1977, petitioner began negotiations with the union for renewal of a collective bargaining agreement which expired September 1, 1977. On September 9, 1977, after failing to reach an agreement, the union went on strike and set up a picket line at petitioner's plant. The petitioner submitted an offer of settlement to the union which it first rejected and then accepted by mailgram on October 16, 1977, abandoning all strike activities and applying unconditionally for reinstatement of the striking employees. Although the petitioner contends that the offer of settlement

had been withdrawn before the union accepted it, petitioner reinstated all of the striking employees for whom there was an available job and resumed normal operation. When those striking employees for whom there was no available job applied for unemployment compensation for the period after October 16, 1977, petitioner opposed their application arguing that since the petitioner and the union had not reached an agreement concerning a collective bargaining contract, the "labor dispute" had not ended and, therefore, the claimants were ineligible for benefits.

The petitioner's contention hinges upon the meaning of the term "labor dispute" in the context of the unemployment compensation disqualification provision of the Employment Security Act which provides at Section 4(f) (Ark. Stat. Ann. § 81-1105(f) [Repl. 1976]) as follows:

> If so found by the Director no individual may serve a waiting period or be paid benefits for the duration of any period of unemployment if he lost his employment or has left his employment by reason of a labor dispute other than a lockout at the factory, establishment, or other premises at which he was employed (regardless of whether or not such labor dispute causes any reduction or cessation of operations at such factory, establishment or other premises of the employer), as long as such labor dispute continues, and thereafter for such reasonable period of time (if any) as may be necessary for such factory, establishment, or other premises to resume normal operation. . . .

The general statutory purpose of unemployment compensation is to relieve the worker from the financial hardship of unemployment which he did not cause. Although an inquiry into fault usually precedes any denial of unemployment compenstation, the "labor dispute" provision eliminates a need for that inquiry by withdrawing, irrespective of fault, unemployment compensation benefits from those whose unemployment was caused by a labor dispute "as long as such labor dispute continues." Recognizing that unemployment compensation might unnecessarily and inequitably undermine stable labor-management relations and be used to

finance a labor dispute, the General Assembly wisely suspended entitlement to unemployment compensation during a labor dispute to preserve the state's neutrality. Since it would be difficult to formulate a definition of "labor dispute" to adequately address every set of facts in which an award of unemployment compensation neither offends our public policy supporting unemployment compensation nor that supporting the labor dispute exception, the legislature deliberately failed to define the term "labor dispute" in the Employment Security Act. Therefore, the meaning of "labor dispute" in the context of the statute must be derived from a case by case approach, harmonizing the factual complexities of labor-management relation conflicts with the underlying public policies.

The petitioner contends that the factual situation involved in this appeal was addressed by this Court in *Guinn* v. *Arkla Chemical Corp.,* 253 Ark. 1029, 490 S.W. 2d 442 (1973). In *Guinn, supra,* when the employer closed his plant during a strike after a "rock bottom" settlement offer from the union, citing adverse economic conditions, the union ceased its strike activities and suspended negotiations with the employer. Claiming that the labor dispute ended when the plant closed and strike activities ceased, the inactive strikers applied for unemployment compensation. They argued that since no jobs were available after the employer closed the plant, they were involuntarily unemployed because they could not return to work even if they wanted to. Perceiving the employer's closing of the plant and the subsequent suspension of negotiations by the union as simply a further manifestation and continuation of labor dispute, this Court held that the labor dispute provision disqualified the claimants since the union and employer had not reached an agreement concerning the terms and conditions under which the employees would return to work if the plant were reopened.

In the fact situation before us today, the union ceased all strike activities and applied unconditionally for reinstatement of all striking employees even though the employer refused to stand by its last offer of settlement after the union tried to accept it. The employer has resumed normal operation, and

no strike participant has refused to return to work when requested by the employer. The special examiner and Board of Review found that the labor dispute provision did not disqualify claimants from unemployment compensation benefits since the labor dispute had effectively ended. We find that there is substantial evidence to support the decision. When the employer disputed the union's right to accept its offer of settlement, the employees did not renew strike activities or suspend negotiations; they stood by their unconditional offer to return to work. Although the union and employer continue to dispute the terms and conditions under which the employees should return to work, there is no dispute about the terms and conditions under which they *will* return to work. When employees in fact return to work after cessation of strike activities induced by a labor dispute, the absence of a collective bargaining agreement between the union and employer is probably irrelevant but is at best only one factor which the fact finder has a responsibility to weigh in determining whether a labor dispute has ended for the purposes of unemployment compensation eligibility.

The state has no interest in withdrawing unemployment compensation from strike participants who have unconditionally offered to return to work for an employer who would willingly reinstate them if he had a job for them. Since the fact finder's decision has an adequate evidentiary basis, and the award of unemployment compensation does not offend the public policies underlying unemployment compensation or the labor dispute exception, we cannot disturb the award.

Affirmed.

FOGLEMAN, C.J., concurs in the result.

STROUD, J., dissents.

JOHN F. STROUD, Justice, dissenting. Local 1249 of the United Automobile Workers went on strike and set up a picket line at petitioner's plant on September 9, 1977. It is undisputed that the strike was called as the result of an inability of the union and the employer to agree on the terms of

a new collective bargaining agreement following the termination of the prior agreement a few days earlier. Therefore, a labor dispute within the meaning of Ark. Stat. Ann. § 81-1105 (f) (Repl. 1976) arose on September 9, 1977, between the union and the employer. The sole question presented on this appeal is whether or not the labor dispute still continued on November 9, 1977, when the matter was heard by a Special Examiner for the Arkansas Employment Security Division.

Without requoting the entire section of the statute set forth in the majority opinion, the portion of the statute applicable to the facts in this case states, ". . . no individual may . . . be paid benefits for the duration of any period of unemployment if he . . . has left his employment by reason of a labor dispute . . . as long as *such* labor dispute continues . . ." (Emphasis added.) By use of the word *such,* the legislature made perfectly clear that so long as the labor dispute that caused the strike continues, the strikers are not entitled to unemployment benefits. In other words, if the same labor dispute existed on November 9, 1977, as existed on September 9, 1977, the individuals seeking unemployment compensation are precluded by the statute from receiving them. Any suggestion that the termination of a strike is the termination of a labor dispute was answered by this court in *Guinn* v. *Arkla Chemical Corp.,* 253 Ark. 1029, 490 S.W. 2d 442 (1973). As pointed out in the majority opinion, the denial of unemployment benefits was sustained after the strike ended and the plant closed, because even if the plant reopened, there was no agreement between the employer and the union.

I disagree with the decision of the Special Examiner that the labor dispute ended on October 16, 1977, when the union ended its strike and sent a mailgram to petitioner accepting the company's last contract offer and also advising that all strikers applied unconditionally for reinstatement. There was clearly no contract offer for the union to accept when it sent the mailgram. The testimony of witnesses representing the employer and the union is overwhelming that the employer had advised the union in the presence of the Federal Mediation Conciliation Service that its offer would be withdrawn on October 5, 1977, if not accepted by that date. No citation of

authority is necessary for the basic premise of contract law that an offer cannot be accepted after it has terminated or been withdrawn. The evidence is clear that the employer withdrew the offer *before* the union accepted it. This is further evidenced by the letter the employer wrote the representative of the union on October 20, 1977. The letter acknowledged receipt of the mailgram, but pointed out that there was no offer on the table to be accepted and suggested a further meeting on October 25, 1977. That meeting was held and further negotiations took place in an effort to resolve the labor dispute, but no agreement was reached due to other developments unrelated to this appeal.

Mr. Jim Bunch, assistant personnel manager of petitioner, testified on Novermber 9, 1977, that the terms of the collective bargaining agreement had not been resolved and that the labor dispute continued. He also acknowledged that negotiations had continued after the union's mailgram of October 16, 1977. Mr. Albert Hayes, president of the local union, also testified on the same day that the labor dispute that began on September 9, 1977, was still continuing and had not been settled.

In his written decision, the Special Examiner also stated that the termination of the labor dispute was confirmed by the fact that the company had begun to rehire strikers. The labor dispute giving rise to the strike was not a dispute between the company and some or all of its employees. The labor dispute was between the company and the union and concerned the terms of a new collective bargaining agreement. Likewise, the strike was not a wildcat strike, but was a strike called by the union due to its dispute with the employer. The labor dispute was admittedly unresolved at the date of the hearing before the Special Examiner, and the fact that the company had been able to reinstate some of the strikers is totally immaterial.

I would reverse the Court of Appeals because I find no substantial evidence to support the decision of the Special Examiner.